R. B. OLIPHANT, Adm'r, and NELLIE McAMIS *v.* MADELINE DWINNELL McAMIS.

(*Knoxville,* September Term, 1954.)

Opinion filed November 16, 1954.

Fraker & Silvers, of Greeneville, for appellant.

H. C. Haynes, of Greeneville, for appellees.

Mr. Chief Justice Neil delivered the opinion of the Court.

The questions made on this appeal are clearly stated in the opinion of the Court of Appeals (Hale, J.) as follows:

"J. Fred McAmis died intestate in Greene County on December 18th, 1952, leaving surviving him his widow, the complainant Nellie McAmis, and a child by a former marriage, the defendant Madeline Dwinnell McAmis. The primary question involved in this litigation is the ownership of personal property of the value of approximately $7,000.00. Mrs. McAmis claims it was held by her and husband as tenants by

the entirety. The daughter disputes this, claiming her distributive share. The Chancellor decided in favor of the widow. The daughter prayed, and was granted, and has perfected this broad appeal.''

The Court of Appeals reversed the decree of the Chancellor and held that the deceased and his widow were the owners of the property as tenants in common and not by the entireties.

The administrator and Mrs. Nellie McAmis filed a petition for certiorari, contending that the court committed error in holding that the property was owned as tenants in common; that the court should have affirmed the Chancellor's decree.

The defendant, Madeline Dwinnell McAmis, filed a petition for certiorari, contending that the deceased as a matter of law was the sole owner of the property and that it was error to hold that her father and stepmother owned the property either by the entirety or as tenants in common.

We granted both writs and the errors assigned have been orally argued by counsel for the respective parties. The Special Chancellor concluded that the husband and wife were joint owners of the property by the entirety, and that the widow took all as survivor. The Court of Appeals, while holding that there was joint ownership, concluded that they were only tenants in· common with consequent legal results.

The evidence upon which the two courts based different conclusions is set out with much detail in the Court of Appeals' opinion, as follows:

''J. Fred McAmis and Nellie Oliphant were married in October, 1932. Each had been previously married. He had been divorced, she had lost her husband by death. By his first marriage he had only

one child, the defendant Madeline Dwinnell McAmis. By her first marriage the complainant had one child, complainant R. B. Oliphant, who qualified as administrator of the estate of the intestate. No children were born to Mr. and Mrs. McAmis.

"At the time of their marriage Mrs. McAmis was the owner of 115 acres of fairly good farm land. To protect her husband she conveyed to him a life estate in a half interest. He had no land, but later his mother conveyed by deed of gift to him and his wife as tenants by the entirety 20 acres of land adjoining the 115 acres. Each had a specific interest in the real estate of the other—he had a life estate in one half of her land, while she was a tenant by the entirety in his 20 acres, which appears to have been in the nature of an inheritance.

"When they married they took a wedding trip in an automobile owned by her. He paid the bills of this trip. She testified, without objection, that when they got back both were 'broke'. They lived on this farm and were not prosperous. During the year 1933 he received from the Veterans Administration the sum of $541.30 as cash surrender value of a policy of Government life insurance, and in the same year he borrowed $568.00 on an adjusted service certificate. In 1936, the balance of this certificate, $568.00, was paid to him. This was used to defray living expenses and hospital bills. At the time of the marriage he was receiving a monthly pension of $18.00. This was discontinued shortly thereafter. Some time later (the date is not shown) his pension was reinstated and he drew $60.00 per month until a month or two prior to his death when it was raised to $63.00.

How this was used is not shown; we infer it was used for the benefit of both.

"When they were married they began to live on the farm of Mrs. McAmis and in her house. At first they did not prosper, although she had enough stock and machinery for a farm of that size.

"In 1936 they decided to venture into blooded Hereford cattle. To that end they borrowed the money upon their joint note from a local bank and purchased two registered heifers, and they became members of the American Polled Hereford Association, the rules of which limit membership to 'owners and breeders of Hereford cattle'. However, the cattle were registered in the name of Mr. McAmis.

"It seems that this venture was profitable. Likewise, there was an improvement in farming conditions so that the parties began to save some money, even after plowing part back in their operations.

"Each had had unfortunate experiences with a bank during the depression, and thereafter they used a checking account only for the purpose of drawing checks to pay registration, etc., in the aforesaid Association. This account was in the name of Mr. McAmis. The remainder of their business was done by cash. For this purpose they kept a safe deposit box in a bank at Greeneville in their joint names. At the time of his death there was $1,600.00 in this box, and in addition there was $600.00 at their home. The bank account previously mentioned had a balance of $52.81 at his death.

"This cash on hand was derived from the sale of cattle, tobacco and other products raised on this farm.

"We have pointed out that when they were married she owned an automobile. It was traded in on another car, and it on a subsequent car; the difference being paid by both of them. At the time of his death there was on hand a 1949 model automobile and a 1949 model farm (¾ ton) truck. Both were registered in the name of Mr. McAmis, as was the insurance thereon. In addition there was a tractor and considerable farm machinery. Mr. McAmis operated the farm while she took care of the domestic end of it. He looked after the purchase of the farming machinery and equipment, but discussed it with her before he did anything. We assume this was paid for in cash the parties had; there is no evidence to the contrary. She knew cattle and aided in their buying and selling. We find that the money and property on hand was derived from the products of the farm, including the cattle, and brought about by the joint efforts of Mr. and Mrs. McAmis.''

Following the above finding of facts the court quotes from the testimony of various witnesses who support the concurrent finding of ''joint ownership''. While the Chancellor did not find the facts in detail it conclusively appears that his opinion was based upon the same facts herein quoted, there being little or no dispute as to these facts. Whether it be a ''concurrent'' finding of facts, or a conclusion of the two courts, the evidence clearly shows that J. Fred McAmis and his wife, Nellie Oliphant McAmis, held all things as the common property of both. The evidence justifies no other conclusion. There was a unity of purpose throughout their entire married life, each having due regard for the welfare of the other. The title to the land, while not involved in this litigation,

manifests the regard each had for the material welfare of the other, not only during their joint lives but after death as well.

■ We attach no importance to the fact that Mr. McAmis registered the automobile and the farm truck in his own name, and took out insurance policies in his name. It would be a rare occurrence if any farmer should have such motor vehicles registered in the names of himself and wife.

■ There is abundant evidence in the record of declarations by Mr. McAmis, made by him to, or in the presence of, competent witnesses, in which he stated "that he and Mrs. McAmis were joint owners of the cattle" and were operating the farm as a joint enterprise. The defendant's counsel insist that such evidence should have no probative value in deciding the paramount issue, i.e. whether or not the joint ownership was by the entirety; that all such testimony is not sufficient to show title; that to prove title in this manner would be a dangerous precedent. We readily agree that such testimony, standing alone, is not of such probative force as to create an estate by the entirety. The reason is manifest. No one could know the secret thoughts of the declarant, or the reason prompting the statement; he is also privileged to change his mind about it. In the meantime the nature and quantum of the property may change entirely, and even become non-existent. Moreover the declarations could be innocently misconstrued, and on the other hand tortured into a meaning wholly foreign to the intention of the declarant. An estate by the entirety, such as we are now considering, should rest upon convincing evidence and never upon mere conjecture. But such statements are not inadmissible and may be entitled to such consideration as the circumstances justify.

But counsel for the defendant earnestly contend that the complainant's suit must fail because there is a failure of the "four classical unities" necessary to create an estate by the entirety. This insistence is based entirely upon the generally accepted rule applicable to the creation of such an estate in land; that is, that it exists only as between husband and wife; that the title and interest must be from the same source as evidenced by one and the same written instruments, the same interest and the same right of possession.

The problem before us is not one that is easy of solution. But we think the several unities may be shown otherwise than by documentary evidence as applying to an estate or interest in personal property. Thus in the case of *Sloan v. Jones,* 192 Tenn. 400, 241 S. W. (2d) 506, 507, 25 A. L. R. (2d) 1235, it was held:

"A tenancy by the entirety may be created by a joint deposit, in name of 'husband or wife', where intention to effect joint ownership of such a deposit appears or may be inferred from circumstances."

The question of intention to effect a joint ownership in personal property was shown by oral testimony. It is expressly held: "The previous decisions of this Court have recognized the fact that an estate by the entireties existed in personal property," and that such an estate may be evidenced by a joint deposit in the name of husband and wife, or "may be inferred from the circumstances". For elaborate annotations upon the questions at issue see 117 A. L. R. 904-910; 8 A. L. R. 1014; and also cases cited in Vol. 2, Sec. 6.6, American Law of Property.

The evidence in the case at bar establishes without any serious dispute a joint ownership of property by the deceased and his wife. There was the undoubted right of Mrs. McAmis to claim title to the realty by survivor-

ship. She and her husband made it that way. Why should she not be entitled to all the produce of the farm, cattle on the farm and farm implements by the same right of survivorship? The cash, amounting to $1,600, in a safety deposit box in the joint names of Mr. and Mrs. McAmis, was owned by the entirety, upon the authority of *Sloan* v. *Jones,* supra.

█ We think Chapter 255 of the Public Acts of 1949 has no application to the case at bar. The Act merely provides that an estate by the entirety may be created by deed of either husband or wife to one another and that the intention to create such an estate must appear upon the face of the instrument of conveyance. This statute makes it possible for either husband or wife to create an estate by the entirety without the necessity of deeding the property to a third party and having that party reconvey to the husband and wife an estate by the entirety.

The decree of the Court of Appeals is overruled and that of the Chancellor is affirmed. We think, however, the costs in the case should be adjudged against the administrator and it is so ordered.