### In re G.W. RIDENOUR, Jr., a/k/a G.W. Ridenour a/k/a George W. Ridenour, Jr., Debtor.

### Dennis GIBBS, Trustee, Plaintiff,

### v.

### Terri Ann RIDENOUR, David Brandt Ridenour and Lewis Alan Ridenour, Defendants.

### Bankruptcy No. 3–84–00216. Adv. No. 3–86–0043.

United States Bankruptcy Court, E.D. Tennessee.

Oct. 16, 1986.

---

Wade M. Boswell, Knoxville, Tenn., for plaintiff.

Lacy & Winchester, P.C., J. Michael Winchester, Knoxville, Tenn., for defendants.

CLIVE W. BARE, Bankruptcy Judge.

This adversary proceeding involves the payment of a receivable owing to the debtor by the transfer of a condominium to a trust for the benefit of the debtor's children. The bankruptcy trustee, asserting the fraudulent transfer provisions of 11 U.S.C.A. § 548(a)(2) (West 1979), seeks to recover the condominium and its furnishings, or the value thereof, for the benefit of the debtor's estate. A substantial number of essential facts have been stipulated.[1]

## I

The debtor, George W. Ridenour, Jr., and Mary Frank Hobbs Ridenour were married in 1955. The remaining defendants in this proceeding are their three children.[2]

The debtor was an attorney licensed to practice law in the State of Tennessee in 1957. He practiced law primarily with members of his family in Clinton, Tennessee, until the mid–1970's. In 1975, the debtor's law firm opened an office in Knoxville, Tennessee, originally known as Ridenour, Ridenour, Ridenour & Bowers. From 1975 to 1983, the debtor served as general counsel from time to time for various banks owned by Jake Butcher and C.H. Butcher, Jr. The debtor's business and personal finances were closely related to

---

1. See Stipulation of Facts and Stipulation of Exhibits and Authenticity of Documents, filed August 25, 1986.

2. Roger L. Ridenour, trustee of the trust for the benefit of the defendants, was dismissed as a defendant on June 10, 1986.

those of both Jake Butcher and C.H. Butcher, Jr.

On October 18, 1982, the debtor and Mrs. Ridenour entered into an agreement involving unit # 47–D in Cherokee Bluff Condominiums, located at 1431 Cherokee Trail, Knoxville, Tennessee. The agreement, executed in anticipation of their divorce, provides for the transfer of the condominium and its furnishings to a trust for the benefit of the three defendants. At the time of the agreement the debtor was residing in the condominium; he remained in physical custody and possession of the condominium at all material times.

On October 25, 1982, Mrs. Ridenour filed a complaint for divorce against the debtor.

On February 14, 1983, the Commissioner of Financial Institutions for the State of Tennessee declared the United American Bank in Knoxville (UAB), the flagship bank of the Butcher banking empire, insolvent. As a result of the failure of UAB, the Ridenour law firm was reorganized and/or dissolved in the spring of 1983.

On March 15, 1983, Mrs. Ridenour dated a "Trust Agreement" identifying the defendants as the beneficiaries and appointing Roger L. Ridenour as trustee. The Trust Agreement was not notarized until May 5, 1983.

On or about March 15, 1983, the debtor and Mrs. Ridenour executed an instrument titled "Contribution To Trust," purporting to transfer Mrs. Ridenour's interest in certain personal property (household furnishings in the condominium) to Roger L. Ridenour as trustee. Also, in this document the debtor disclaimed any interest in the same personalty. However, to the extent he had any interest in the household furnishings in the condominium the debtor transferred same to the trust benefiting the defendants.

Sonya Butcher and husband, Jake Butcher, executed a warranty deed dated March 15, 1983, to Roger L. Ridenour, trustee, conveying all of their right, title and interest to the condominium in question, subject to a first mortgage, with the hereditaments and appurtenances thereto. This warranty deed was notarized May 4, 1983, and recorded May 6, 1983.

A "Final Judgment For Divorce," entered also on May 6, 1983, in the Chancery Court in Anderson County, Tennessee, granted Mrs. Ridenour an absolute divorce from the debtor. The divorce decree recites in part:

[T]he parties have contributed jointly to the creation of their marital estate during the course of their twenty-seven and one-half (27½) years of marriage and ... all property acquired during their marriage is jointly owned property, regardless of which party is title holder of record. The Court further finds that the real and personal property comprising the marital estate should be divided between the parties as set forth herein.

The divorce decree does not mention the condominium or the furnishings, except it does provide that "The parties have heretofore divided all of the household furnishings, household goods, furniture, and contents contained in their residence ..." and that "[E]ach party shall retain as his or her sole and exclusive property those items of personal property presently in their possession."

On February 10, 1984, an involuntary chapter 7 bankruptcy petition was filed against the debtor. An order for relief was entered by this court on March 2, 1984.

The debtor's schedules, as amended on May 2, 1984, reflect estimated priority and secured claims of $28,781,295.58. Combined with estimated unsecured claims of $8,155,862.14, his liabilities as of the petition date, totaling more than $36,000,000.00, greatly exceed the scheduled value ($5,989,153.71) of his assets. Except for certain partnership interests, sold for $100,000.00 by the debtor in August 1983, his debt structure was approximately the same in May 1983 as it was on the petition date. Defendants do not contest the debtor's insolvency as of the alleged (May 6, 1983) transfer date.

By letter dated September 15, 1984, Mrs. Ridenour advised the attorney for the

bankruptcy trustee of various facts and circumstances which, among other things, related to the transfer of the condominium into the trust. Mrs. Ridenour wrote that she and the debtor entered into a "compromise on the condominium in Knoxville" resulting in the establishment of the trust, for the benefit of their children, into which the condominium and personalty were placed.[3]

When the youngest beneficiary of the trust attained the age of eighteen (18), the trust was terminated according to its provisions. Termination was effected by a Request for Termination of Trust and Release of Liability executed by each of the defendants on or before November 18, 1985. Roger L. Ridenour, as trustee, subsequently executed a quitclaim deed, dated November 18, 1985, conveying the trust's interest in the condominium to the defendants. This quitclaim deed was recorded on November 20, 1985.

The condominium and the household furnishings therein were the only assets of the trust. The condominium has been vacant since the suicidal death of the debtor on February 1, 1986. During his occupancy the debtor paid a monthly sum directly to Roger L. Ridenour, trustee, who in turn paid the mortgage payment and other expenses relating to the condominium. Most, if not all, of the furnishings are in the possession, custody or control of the defendants.

Currently, the condominium is listed for sale by agreement of the parties for $87,-500.00. The mortgage is in arrears. The parties believe that the equity in the condominium above the mortgage is $40,000.00. The value of the personalty is $10,000.00.

## II

Section 548(a)(2), relied upon by the bankruptcy trustee to avoid the transfer of the condominium and personal property to the trust established for the benefit of the debtor's children, as of the date of the

filing of the petition herein provided as follows:

> The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor—

> .    .    .    .    .

> (2)(A) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

> (B)(i) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation....

11 U.S.C.A. § 548(a)(2) (West 1979).

The bankruptcy trustee asserts the transfer of the condominium and its furnishings by warranty deed from the Butchers to Roger L. Ridenour, trustee, was effected by or on behalf of the debtor and that the transfer was fraudulent. Defendants respond there is no proof that the debtor had an interest in the disputed property because there is no proof of a transfer of the property to him in the first instance.

The October 18, 1982 agreement between the debtor and Mrs. Ridenour provides:

(1) Mary Frank Ridenour intends to sue George W. Ridenour, Jr. for divorce.

(2) *George W. Ridenour, Jr.* now resides at 1431 Cherokee Trail # 47, Knoxville, Tennessee and *either holds or will hold beneficial title to that residence including furniture and furnishings subject only to conveyance of the legal title by Jake F. Butcher and Sonya Butcher* and subject to a current first mortgage on the residence.

(3) The parties do not wish that said residence, furniture and furnishings shall become involved in the disputed property division between the parties in the divorce action.

---

3. The parties were not able to proffer sworn testimony by Mrs. Ridenour due to her serious illness, ending in her death on June 24, 1986.

(4) George W. Ridenour, Jr., in consideration of relinquishment by Mary Frank Ridenour of any claim upon the residence, furniture and furnishings as property to be adjudicated in the divorce case, does agree to cause the legal title to be placed in a trust to be established by Mary Frank Ridenour for the sole benefit of the parties['] children. [Emphasis added.]

The contemplated trust is evidenced by the "Trust Agreement" between Mrs. Ridenour and Roger L. Ridenour, trustee, dated March 15, 1983, and notarized May 5, 1983. Pursuant to the "Contribution To Trust" agreement dated March 15, 1983, Mrs. Ridenour agreed to transfer to Roger L. Ridenour, trustee, "the personalty set forth in 'Schedule A' attached hereto, all of which is located at Unit # 47, 1431 Cherokee Trail, Knoxville, Tennessee." A paragraph subscribed by the debtor in the "Contribution To Trust" agreement recites: "I disclaim having any interest in the aforesaid personalty, however to the extent that I may have any interest in the personalty set forth in 'Schedule A,' I hereby transfer and relinquish same to ... [Roger L. Ridenour, trustee]." ("Schedule A" is a room-by-room listing of the furnishings and household goods in the condominium.)

■ Sonya Butcher, solely or jointly with Jake Butcher, was indebted to the debtor for legal services. When asked why the Butchers were willing to transfer the condominium to the trust benefiting the defendants, Roger L. Ridenour responded:

The only thing I can tell you is that it was my understanding that G.W. [the debtor] had done a good deal of work for Sonya and Jake [Butcher] in the form of legal work and that the transfer ... was

supposed to be a part of the attorney's fees that he would receive.[4]

Further, on May 2, 1984, the debtor amended his response to question 12 (Transfers of Property) in his statement of financial affairs by stating in part:

During the negotiations ... relevant to the ... [divorce] decree ... a transfer of ownership of the condominium located and designated as Unit 47, Cherokee Trail, Knoxville, Tennessee 37920, was made from Sonya Butcher to the children of the Debtor. Mrs. Butcher had agreed to transfer her interest in the aforesaid condominium to Debtor in consideration for legal services provided by the Debtor to Mrs. Butcher. As part of the divorce settlement with Mary Frank Ridenour, the Debtor agreed to cause the ownership of this condominium to be transferred to the children of the Debtor, in trust. This agreement to transfer the aforesaid condominium to the children of the Debtor was established between the Debtor and his former wife in either November or December 1982. Actual transfer of the ownership of the condominium to Roger L. Ridenour as Trustee for the children of the Debtor, occurred at approximately the same time as the divorce granted from his former wife on or about May 6, 1983.

Hence, a claim of the debtor, which would have been property of his estate if not satisfied prior to the filing of the bankruptcy petition, 11 U.S.C.A. § 541(a) (West 1979), was satisfied by the transfer of the condominium and furnishings,[5] not to the debtor, but to a trust established for defendants' benefit.

Clearly, the debtor had a legal or equitable interest in the condominium and its furnishings which he, albeit indirectly, transferred[6] to the trust benefiting the

---

**4.** Discovery Deposition of Roger Ridenour at 8 (Exh. 12).

**5.** The warranty deed from the Butchers to Roger L. Ridenour, trustee, conveys the condominium "with the hereditaments and appurtenances thereto appertaining." "Hereditaments" are "[t]hings capable of being inherited ... including not only lands and everything thereon, but also heirlooms, and certain furniture which, by

custom, may descend to the heir together with the land." *Black's Law Dictionary* 859 (4th ed. 1951).

**6.** The applicable definition of "transfer" in this proceeding is: "[E]very mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an interest in property...." 11 U.S.C.A. § 101(40) (West 1979).

defendants. The transfer was not effected until the Butchers' deed to Roger L. Ridenour, trustee, was recorded on May 6, 1983, within the one-year period preceding the debtor's bankruptcy petition.[7]

■ Defendants maintain that their mother's relinquishment of any interest in the condominium and its furnishings represents consideration for the transfer to the trust. During discovery Roger L. Ridenour testified:

Q As far as the trust, itself, was there any payment to him from the trust or was this a gratuitous allowing of the transfer from Sonya to the trust by G.W. Ridenour?

A As far as I know, the trust had not provided G.W. [the debtor] any money for the condominium. As far as the consideration was concerned, the consideration was the fact that the condominium would not be made a part of the divorce. It was part of the settlement between Mary Frank [Ridenour] and G.W.[8]

For purposes of § 548, "value" means in part: "property, or satisfaction or securing of a present or antecedent debt of the debtor...." 11 U.S.C.A. § 548(d)(2) (West 1979). The debtor did not receive value within the meaning of this definition for the transfer of the condominium and its furnishings.[9]

■ Defendants insist that in any event the bankruptcy trustee is entitled only to a one-half (½) interest in the condominium and furnishings. They rely upon the language in the divorce decree reciting "that all property acquired during their marriage is jointly owned property...." However, the division of property in the divorce proceeding did not affect the rights in the condominium of the debtor or Mrs. Ridenour. They explicitly agreed that the condominium and its furnishings would be excluded from their property settlement in the divorce proceeding. Defendants also contend the receivable for legal fees owing by Sonya Butcher was held as tenants by the entirety and that if the Butchers' warranty deed transfer to the trust is voidable there is a presumption under Tennessee law that the debtor and Mrs. Ridenour owned the condominium property as tenants by the entirety. This court disagrees.[10] Mrs. Ridenour never had any interest in the receivable owing by Sonya Butcher to the debtor, and she never acquired any interest in the condominium or furnishings transferred directly to the trust by the Butchers.

The condominium and its furnishings, or the value of the furnishings, may be recovered by the bankruptcy trustee for the benefit of creditors. Defendants will be directed to execute a deed transferring

---

7. For the purposes of § 548, "[A] transfer is made when such transfer becomes so far perfected that a bona fide purchaser from the debtor against whom such transfer could have been perfected cannot acquire an interest in the property transferred that is superior to the interest in such property of the transferee...." 11 U.S.C.A. § 548(d)(1) (West 1979).

8. Discovery Deposition of Roger Ridenour at 25 (Exh. 12).

9. Assuming arguendo that the debtor did receive value, he did not receive reasonably equivalent value.

10. Case authority relied upon by defendants is distinguishable. In *Oliphant v. McAmis,* 197 Tenn. 367, 273 S.W.2d 151 (1954), a surviving spouse contended that she and her deceased husband owned personal property as tenants by the entirety. A child of the decedent by a previous marriage claimed her deceased father had solely owned the property. The surviving spouse and decedent had jointly borrowed money to fund their cattle raising venture. She had contributed stock and machinery to their farming operations and assisted in buying and selling cattle. The court found in favor of the surviving spouse. Mrs. Ridenour did not contribute in any way to the receivable owing by Sonya Butcher to the debtor.

*First American Nat'l Bank v. Evans,* 220 Tenn. 393, 417 S.W.2d 778 (1967) is also distinguishable. In *Evans* the court found that a note payable to a husband and wife was held as tenants by the entirety, notwithstanding that the note represented the proceeds from property owned solely by the husband. There was no transfer herein jointly to the debtor and Mrs. Ridenour of the receivable or the proceeds thereof.

444

their interest in the condominium to the bankruptcy trustee.