**Martin B. CATT, Plaintiff–Appellant,**

v.

**Wanda L.H. CATT, Defendant–Appellee.**

Court of Appeals of Tennessee,
Western Section, at Jackson.

July 8, 1993.

Application for Permission to Appeal
Denied by Supreme Court
Oct. 4, 1993.

Warner Hodges, III, Germantown, for plaintiff-appellant.

Herschel L. Rosenberg, Van Eaton & Rosenberg, Memphis, for defendant-appellee.

CRAWFORD, Judge.

This case involves the disposition of property held by a husband and wife after husband's death. Billy U. Lyman Catt (hereinafter Deceased) died intestate June 25, 1991. He was survived by Martin Catt (hereinafter Appellant), his only child, and Wanda Catt (hereinafter Appellee), his wife. Appellant was the child of Deceased and a former wife, but had been reared in the household of Deceased and Appellee and adopted by Appellee prior to the death of Deceased.

Deceased was a resident citizen of the State of Mississippi at the time of his death and Appellant was appointed administrator of his estate in the Chancery Court of Desoto County, Mississippi.

This dispute involves a business run by Deceased and Appellee in Shelby County, Tennessee, known as C & W Auto Sales and Salvage (hereinafter C & W). Deceased and Appellee were married in 1971 and in 1973 bought the real property on which C & W was later located. The lot was purchased with marital funds of Deceased and Appellee. At the time of the purchase, Appellee was office manager of Jeffcoat Motors, and Deceased worked at Trojan Luggage. Appellee and Deceased started the business around 1975 while they were still employed at their other jobs, and Deceased's father, Garland Catt, operated the business during the day.

Deceased and Appellee were divorced in 1982 in Shelby County and Deceased was awarded all the property with the exception of $50,000.00 which was to be paid by the terms of the marital dissolution agreement to Appellee. Approximately four months following the final decree of divorce, Deceased and Appellee remarried, and it is stipulated that all property, including funds, was returned to its status before the divorce.

In 1984, while Deceased continued working at Trojan, Appellee quit her job and began working at C & W full-time. In approximately 1985, Deceased and Appellee moved to the State of Mississippi, where they were residents at the time of Deceased's death. Deceased quit his employment at Trojan in 1986 to begin working full-time at C & W. The largest growth of C & W's business

occurred after the time Deceased and Appellee had moved to Mississippi.

Appellant began working at C & W in 1984 when he was 16 years old. He continued to work there for approximately seven years as a garage man or mechanic. When Appellant's father became ill two years prior to his death, Appellant began assisting in the buying of cars for the lot. After the death of Deceased, Appellee continued with the business and actually had business cards printed and passed out to customers which stated, "C & W Auto Sales and Salvage, Wanda L. Catt & Son, Marty, Owners." Later, Appellant made a claim as legal heir to part of the business, but was rejected by Appellee and he subsequently filed suit.

Appellant's complaint seeks an accounting, possession and sale of the business and division of proceeds. He prays for operation of the business by a receiver until it is sold. The complaint alleges that Deceased conducted the business as a sole proprietorship and that pursuant to the Mississippi laws of descent and distribution, Appellant is entitled to a distributive share of the business. Appellant's amended complaint alleges in the alternative that if the court should find that the business was not operated as a sole proprietorship by Deceased, the court should find that the business was operated as a joint venture or partnership between Deceased and Appellee. In that event, he prays that pursuant to Tennessee partnership law, the partnership be dissolved and the Deceased's interest be distributed pursuant to the Mississippi laws of descent and distribution.

Appellee's answer denies that Appellant is entitled to any share of the business known as C & W Auto Sales and Salvage and avers that the business was jointly owned by Appellee and Deceased as tenants by the entirety, which became solely hers upon Deceased's death.

■ This case was tried by the court without a jury, and at the conclusion of appellant's proof, appellee moved for a "directed verdict," which was granted by the court. We feel compelled to digress for a moment to comment on the procedure utilized in this case. Motions for directed verdict are neither necessary nor proper in a case that is being tried without a jury. *City of Columbia v. C.F.W. Constr. Co.*, 557 S.W.2d 734 (Tenn. 1977). Verdicts are rendered by juries; courts enter judgments. The words of Justice Brock writing for the Court in *City of Columbia* merit repetition here:

> The motion authorized by this rule is not to be confused with a motion for directed verdict which is authorized by Rule 50, Tennessee Rules of Civil Procedure. Motions for a directed verdict are neither necessary nor proper in a case which is being tried without a jury. Motions for dismissal in non-jury cases under Rule 41.02(2), Tennessee Rules of Civil Procedure, and motions for directed verdicts in jury cases under Rule 50, Tennessee Rules of Civil Procedure, are somewhat similar, but, there is a fundamental difference between the two motions, in that, in the jury case, the judge is not the trier of facts while in the non-jury case he is the trier of the facts. In the jury case he must consider the evidence most favorably for the plaintiff, allow all reasonable inferences in plaintiff's favor and disregard all counteracting evidence, and, so considered, if there is any material evidence to support a verdict for plaintiff, he must deny the motion. But in the non-jury case, when a motion to dismiss is made at the close of plaintiff's case under Rule 41.02(2), the trial judge must impartially weigh and evaluate the evidence in the same manner as though he were making findings of fact at the conclusion of all of the evidence for both parties, determine the facts of the case, apply the law to those facts, and, if the plaintiff's case has not been made out by a preponderance of the evidence, a judgment may be rendered against the plaintiff on the merits, or, the trial judge, in his discretion, may decline to render judgment until the close of all the evidence. The action should be dismissed if on the facts found and the applicable law the plaintiff has shown no right to relief.

557 S.W.2d at 740.

The judgment of the trial court for defendant recites:

[T]hat the law of the State of Tennessee is controlling as to the ownership of all realty and personalty involved in the business known as C & W Auto Salvage, and that it was owned by the defendant and her deceased husband as tenants by the entirety and not as a sole proprietorship or partnership or joint venture and, therefore, finds in behalf of the defendant.

Appellant presents two issues for this Court's review. The first issue, as stated in Appellant's brief, is:

1. Did the chancellor err in holding that the applicable law concerning the descent and distribution of the business, the realty and the personalty at 966 West Mitchell Road, Shelby County, Tennessee was the law of the situs of the property (Tennessee law) rather than the law of the state of domicile at the time of death (Mississippi law)?

■ We have closely examined the judgment of the trial court and his findings therein and cannot find that the court made any judgment as to the applicable state law of descent and distribution. To the contrary, the trial court's finding that the "realty and personalty involved in the business known as C & W Auto Salvage ... was owned by the defendant and her deceased husband as tenants by the entirety ..." completely eliminates the necessity of making a determination of the applicable state law regarding descent and distribution. In a tenancy by the entirety, each party owns the whole, and on death of one of the parties, the survivor takes no new title or estate because the survivor is in possession of the whole from its inception. *Moore v. Cole*, 200 Tenn. 43, 289 S.W.2d 695 (1956). The trial court in the instant case determined that the property in question was owned as tenants by the entirety and thus found no necessity for making a determination as to the proper state law governing descent and distribution. This issue is without merit.

The second issue presented for review, as stated in Appellant's brief, is:

2. Did the chancellor err in holding that the property in question was owned by the defendant and her deceased husband as tenants by the entirety and not as a sole proprietorship or partnership or joint venture?

Appellant concedes that the realty on which C & W was situated was held by the Appellee and the Deceased as tenants by the entirety, but contends that the business itself cannot be held as tenants by the entirety but must be a recognizable business entity under the law of this state, that is, a corporation, sole proprietorship, limited partnership, joint venture or partnership. He asserts that under the facts of this case, C & W had to be either a sole proprietorship, joint venture or partnership.

■ Tenancy by the entirety is a form of property ownership unique to married persons, and it is well-settled in Tennessee that personal property, as well as realty, may be owned by spouses by the entirety. *Griffin v. Prince*, 632 S.W.2d 532 (Tenn.1982); *see Mays v. Brighton Bank*, 832 S.W.2d 347 (Tenn.App.1992). In *Griffin*, the Court said:

It is, of course, legally permissible for a husband and wife to own either real or personal property in any manner they choose, such as tenants in common, individually, in partnership, as life tenant and remainderman, or any other. (citations omitted)

\* \* \* \* \* \*

It is well settled in this state that the words of a conveyance or legal instrument which would make two other persons joint tenants under the common law, or tenants in common under T.C.A. § 64–107, will create tenancy by the entirety in a husband and wife. (citations omitted)

This Court has permitted the use of extrinsic evidence to establish the type of ownership intended by the parties, and has gone very far in finding that spouses owned real or personal property as tenants by the entirety, despite the fact that a title document indicated otherwise. *See Oliphant v. McAmis*, 197 Tenn. 367, 273 S.W.2d 151 (1954) (registered cattle, a bank account and a vehicle all recorded solely in the name of the husband shown to have been owned by the entirety).

632 S.W.2d at 535.

*Oliphant v. McAmis*, 197 Tenn. 367, 273 S.W.2d 151 (1954), involved determination as

to the character of the tenancy by which the deceased husband and his widow had held personal property. The husband and wife were engaged in a farming operation and the evidence indicated they were operating the farm as a joint enterprise. However, the automobile and the farm truck were registered in the husband's name only and the insurance policies were issued solely in his name. In addition to the truck and automobile, the farm operation included a tractor and considerable other farm machinery. The farm operation also included buying and selling cattle and the total income from the farm operation included the cattle as well as the other products produced by the farm. The income was a result of the joint efforts of both husband and wife. In holding that the entire farming operation was held as tenants by the entirety, the Court said:

> The question of intention to effect a joint ownership in personal property was shown by oral testimony. It is expressly held: "The previous decisions of this Court have recognized the fact that an estate by the entireties existed in personal property" and that such an estate may be evidenced by a joint deposit in the name of husband and wife, or "may be inferred from the circumstances". For elaborate annotations upon the questions at issue see 117 A.L.R. 904–910; 8 A.L.R. 1014; and also cases cited in Vol. 2, Sec. 6.6, American Law of Property.

> The evidence in the case at bar establishes without any serious dispute a joint ownership of property by the deceased and his wife. There was the undoubted right of Mrs. McAmis to claim title to the realty by survivorship. She and her husband made it that way. Why should she not be entitled to all the produce of the farm, cattle on the farm and farm implements by the same right of survivorship? The cash, amounting to $1,600, in a safety deposit box in the joint names of Mr. and Mrs. McAmis, was owned by the entirety, upon the authority of Sloan v. Jones, supra.

273 S.W.2d at 154.

■ In the case at bar, it is established that the land was titled in the name of the parties as tenants by the entirety and the land was used in the conduct of the salvage business. Evidence was introduced that both parties obligated themselves toward the borrowing of funds to open and run the business. Deceased and Appellee only had one checking account and that account was held in the name of "Billy L. and Wanda Catt, d/b/a C & W Auto Sales and Salvage," and this account was used both for the business and for their own personal use. Both the deceased and appellee worked full time in the business and all the business licenses and insurance reflect that the appellee and the deceased owned the business jointly. The only evidence to the contrary was the nature of the tax returns filed in the individual name of Deceased.

■ The trial court found that Appellee and Deceased intended the business to be held as a tenancy by the entirety. Since this case was tried by the court sitting without a jury, we review the case *de novo* upon the record with a presumption of correctness of the findings of fact by the trial court. Unless the evidence preponderates against the findings, we must affirm, absent error of law. T.R.A.P. 13(d). Upon review of the record and in light of established Tennessee law, we find, as did the trial court, that the evidence supports the conclusion that Appellee and Deceased held C & W as a tenancy by the entirety.

Accordingly, the judgment of the trial court is affirmed, Appellant's complaint is dismissed and the case is remanded to the trial court for such further proceedings as may be necessary. Costs of the appeal are assessed against Appellant.

FARMER and NEARN (Retired), JJ., concur.