IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
_____

**ROBERT E. BELCH,**

     Plaintiff-Appellant,

Vs.

Madison Chancery No. 51217
C.A. No. 02A01-9806-CH-00165

**DELISA ALSUP, INDIVIDUALLY
AND AS EXECUTRIX OF THE ESTATE
OF DANITA ANNE BELCH, AND AS
ADMINISTRATRIX OF THE ESTATE
OF DALTON RAY HAWKINS, AND
AS TRUSTEE OF THE DANITA
ANNE BELCH CHILDREN'S TRUST;
KATHY PIERCE, KENNETH HAWKINS;
DEBRA WADLEY; HNR CORPORATION;
CARRIAGE HOUSE SUBWAY #2992, INC.;
SUBWAY OF LEXINGTON, INC.; SUBWAY
STORE # 12491, INC.,**



**FILED**

**May 11, 1999**

**Cecil Crowson, Jr.
Appellate Court Clerk**

     Defendants-Appellees.
_____

FROM THE MADISON COUNTY CHANCERY COURT
THE HONORABLE JOE C. MORRIS, CHANCELLOR


Lloyd R. Tatum; Tatum, Tatum & Weinman of Henderson
For Appellant

Harold F. Johnson of Jackson
For Appellees


***REVERSED IN PART, AFFIRMED IN PART AND REMANDED***

Opinion filed:


**W. FRANK CRAWFORD,
PRESIDING JUDGE, W.S.**


**CONCUR:**

**ALAN E. HIGHERS, JUDGE**

**DAVID R. FARMER, JUDGE**

     This appeal involves a suit to set aside alleged fraudulent transfers of property and to determine ownership interests in property. Plaintiff/Appellant, Robert E. Belch (hereinafter Plaintiff or Belch), appeals from the order of the trial court in favor of Defendants/Appellees,

Delisa Alsup, Kathy Pierce, Kenneth Hawkins and Debra Wadley (hereinafter Defendants or by name).

## FACTS

Plaintiff is the surviving spouse of Danita Hawkins Belch who died September 21, 1994. Mrs. Belch was also survived by the Defendants, four children by her previous husband Dalton Hawkins, deceased. Dalton and Danita Hawkins owned stock in corporations operating Subway Restaurant franchises in Union City, Lexington, and Jackson, Tennessee. They also owned as tenants by the entirety thirty-five acres of real property in Madison County, Tennessee, on which was located a trailer, barn, and a house. They occupied the house on the property as their home until Mr. Hawkins's death in 1989, and Danita Hawkins continued to live on the property until her marriage to Robert Belch in January 1992. Upon Dalton Hawkins's death, Danita Hawkins became the owner of the real property as surviving tenant by the entirety, but it is unclear from the record how the Hawkins owned the stock in the Subway Restaurant corporations. It appears from the record that Dalton Hawkins died intestate, and if the stock in the corporations was not owned as tenants by the entirety but as tenants in common, Defendants would have acquired an interest in the corporate stock upon Dalton Hawkins's death. On the other hand, if the stock was owned as tenants by the entirety, Danita Hawkins would have been the sole owner as the surviving tenant by the entirety.

After the Belches married in January 1992, Danita was diagnosed with cancer in March 1992 and began a treatment regimen. During their marriage, the Belches participated in the operation of the aforementioned Subway restaurants. The Belches also purchased the Subway franchise in Selmer, Tennessee, in November, 1993, and they incorporated another Subway franchise located on Oil Well Road in Jackson in June 1994.

In 1994, Mrs. Belch's medical condition began to decline rapidly, and her marriage to Robert Belch also began to deteriorate. The Belches separated in July 1994, and Danita Belch filed for divorce on September 12, 1994. The divorce proceedings terminated upon Danita's death on September 21, 1994.

It is undisputed that in the months leading up to her death, Mrs. Belch divested herself of most of the property she held, including the real property and her interests in the Subway

restaurants. On July 1, 1994, Mrs. Belch transferred almost all of her personal property including her interests in four of the Subway restaurant corporations to her children by means of a trust agreement. On July 13, 1994, Mrs. Belch executed deeds conveying the real property located in Madison County to three of her children. The deeds were recorded on September 21, 1994, the date of Mrs. Belch's death. Under the terms of her Will, Danita Hawkins Belch bequeathed to Robert Belch her interest in the Selmer Subway corporation if he assumed all debts of the operation and did not challenge the validity of the will.

On November 16, 1995, Robert Belch filed a petition to set aside the fraudulent transfers; to compel an accounting by Delisa Alsup, executrix of the Danita Belch's estate; to remove Delisa Alsup as executrix and to compel an accounting of the corporate and partnership assets. Named as defendants were Delisa Alsup, individually and as executrix of the estate of Danita Anne Belch and as executrix of the estate of Dalton Ray Hawkins and as trustee of the Danita Anne Belch Children's Trust; Kathy Pierce; Kenneth Hawkins; Debra Wadley; Bobby Rogers; HNR Corporation; Carriage House Subway #2992, Inc.; Subway Store of Lexington, Inc.; and Subway Store #12491, Inc. The various defendants filed answers, and on May 9, 1997, Robert Belch filed a "Counterclaim for Declaratory Relief"[1] in which he sought a judicial declaration that he and Danita Belch had owned the Selmer, Tennessee, Subway corporation as tenants by the entirety and that upon Danita's death, ownership in fee simple passed exclusively to Robert Belch. Subsequently, on August 12, 1997, Robert Belch filed an amended complaint in which he sought to set aside, as fraudulent, the gifts and transfers of personal property made to the Danita Anne Belch Children's Trust; a declaration that he was an express or implied partner with Bobby and Beverly Rogers; and a declaration that he and Danita Belch held ownership interests in certain other Subway corporations as tenants by the entirety and that as a result, Mrs. Belch's ownership passed outside of her estate directly to Mr. Belch.

Defendants Bobby Rogers, Beverly Rogers and HNR Corporation were dismissed by final order granting summary judgment entered in the trial court on September 11, 1997. Plaintiff filed a notice of appeal on September 11, 1997, but the separate appeal as to the Rogers

---

[1] We are not clear on this terminology for an original complainant. It appears that this is an amendment to the complaint, although not permitted by court order. In any event, this issue was tried by consent of the parties.

and HNR Corporation has not yet been heard by this Court.

A non-jury trial was held in August 1997. On December 30, 1997, the trial court filed its findings of fact, which were incorporated into the final judgment entered on March 20, 1998. In that order, the trial court determined that the appellant was not a partner or otherwise an owner in any of the Subway restaurant corporations as he had alleged except for his fifty percent ownership in the Selmer corporation. The court also held that the transfers made by Danita Belch to her children were not fraudulent. The appellant timely filed a notice of appeal on April 14, 1998, and the cause is properly before this Court for consideration.

## ISSUES ON APPEAL

The following issues have been raised on appeal:

1. Whether the trial court erred in failing to set aside the transfers of real and personal property made by Danita Anne Belch to her children;

2. Whether the trial court erred in failing to declare that Robert Belch was a joint owner or partner with his wife of certain businesses; and

3. Whether the trial court erred in failing to declare that Robert Belch and Danita Belch owned certain businesses as tenants by the entirety.

This action was tried before the Chancery Court of Madison County sitting without a jury. Pursuant to Rule 13(d) T.R.A.P., this Court's review of the findings of fact by the trial court shall be *de novo* upon the record, accompanied by a presumption of correctness, unless the preponderance of the evidence is otherwise.

**I. Whether the trial court erred in failing to set aside the transfers of real and personal property made by Danita Anne Belch to her children:**

T.C.A. § 31-1-105 provides:

> Any conveyances made fraudulently to children or others, with an intent to defeat the surviving spouse of his distributive or elective share, is voidable at the election of the surviving spouse.

Until July 1994, Danita Belch's estate was comprised principally of two assets: the 35 acres of land on which she and her children had lived and her ownership interests in the various Subway restaurant corporations. On July 1, 1994, Danita Belch established the "Danita Anne Belch Childrens' Trust." The initial trust property consisted solely of her ownership interests in the various Subway corporations, and the property placed in trust is described as:

> 666b Shares of Common Stock (or 66b % of all stock issued) in Carriage House Subway No. 2992, Inc.
>
> 500 Shares (or 50% of all stock issued) of Common Stock in Subway of Lexington, Inc.,

4

500 Shares (or 50% of all stock issued) of Common Stock in Subway of Union City, Inc., and

250 Shares (or 25% of all stock issued) of Common Stock in Subway #12491, Inc. *(Jackson-Oil Well Road)*
**Emphasis Ours.**

Two weeks after establishing the Trust, Danita Belch executed separate deeds dated July 13, 1994 to transfer the 35 acres of real property to three of her children: Delisa Alsup, Kathy Pierce and Kenneth Hawkins. However, the children did not register the deeds until September 21, 1994, the date of their mother's death. Belch asserts that all of these transfers were fraudulent conveyances.

There can be no fixed rule for determining when a transfer or gift is fraudulent to the surviving spouse. Instead, each case must be determined on its own facts and circumstances. *Sherrill v. Mallicote*, 417 S.W.2d 798 (Tenn. App. 1967). In *Warren v. Compton*, 626 S.W.2d 12 (Tenn. App. 1981), this Court, relying upon the *Sherrill* case, enumerated five factors which courts should weigh when considering the fraudulent intent of the donor-spouse. They are:

1. Whether the transfer is made without consideration;
2. The size of the transfer in relation to the total assets of the donor-spouse;
3. The time between the transfer and the death of the donor-spouse;
4. Relations which existed between the husband and wife at the time of the transfer; and
5. The source from which the property came.
*Id.* at 17.

In *Finley v. Finley*, 726 S.W.2d 923, 924 (Tenn. App. 1986), the Eastern Section of this Court noted two additional considerations: (1) whether the transfer was illusory, and (2) whether the surviving spouse was adequately provided for in the will.

In regard to the transfer of the real property, we do not find that the conveyance was made with the intent to defraud. The deeds recite that consideration, albeit nominal, was paid for each conveyance. Moreover, it is undisputed that the property had been in the Hawkins family for quite some time, having been owned by Danita Hawkins Belch and her first husband Dalton Hawkins and used by them to rear their children. Moreover, the proof is uncontroverted that a division of this property was agreed upon between the children and the Hawkinses, and the children actually took possession of their respective parcels. We do not find in the record any proof as to the value of the land in relation to the value of Danita Belch's entire estate, although it is apparent that the legal transfers occurred approximately two months before Danita

5

Belch's death and at the time when her marriage to Robert Belch had deteriorated.

In regard to the other criteria, we find the transfers of real property were not illusory as that term has been defined by this Court. In ***Warren***, this Court determined that "illusory" is defined to mean:

> "deceiving by false appearances; nominal as distinguished from substantial. As used in defining a transfer of property we treat the word as meaning that the transferor retained such elements of ownership and control over the property as renders the purported transfer deceptive, incomplete and misleading - a pretended transfer rather than a real transfer."
> 626 S.W.2d at 19.

The ***Warren*** court cautioned others called upon to weigh the foregoing factors not to take a mathematical approach by tallying the factors in favor of each party and either affirming or setting aside a conveyance based on the sum total. Heeding this caveat and considering the foregoing factors, the Court is of the opinion that the transfers of real property were without improper motive or intent; if anything, the legal transfers were long overdue. Our conclusion is supported by ample evidence in the record.

In 1988, when both Danita and Dalton Hawkins were living, the Hawkins and their children had discussed dividing the real property among the children. Danita Hawkins had even drawn on a plat how the property should be divided. When Danita and Robert Belch married, they moved into a house on Michelle Drive in Jackson, away from the property at issue. Thereupon, Delisa Hawkins Alsup moved into the main house on the property at issue and made rent payments to her mother in the amount of the mortgage payment. Another child, Kathy Hawkins Pierce, ran horses on the property, and Kenneth Hawkins even posted his portion of the property for hunting purposes. From the evidence presented, it appears to the Court that the transfers of the real property by Danita Belch to three of her children on July 13, 1994, were not done to defraud and were not illusory transactions. Accordingly, we affirm the trial court's determination in regard to this issue.

The Court next turns its attention to the issue of Danita Belch's transfer of her ownership interests in the various Subway restaurant corporations to the Childrens' Trust. When applying the foregoing factors to the conveyances of ownership interests in the Subway corporations, we determine that the conveyances were fraudulent. Shares of stock in four separate Subway

6

corporations - Lexington, Union City, Jackson-Carriage House and Jackson-Oil Well Road - were placed into the Childrens' Trust, for which no consideration was paid. While it is unclear as to what interest in the corporations she actually owned and there is no evidence as to the value of her interests in relation to the value of her entire estate, it is evident that her ownership interests in the various Subway corporations constituted the bulk of her assets and were transferred at a time in which both her health and her marriage were deteriorating. Moreover, it appears that the transfer of her ownership interests was illusory. While she supposedly transferred her ownership interests in the Subway corporations on July 1, 1994, thereafter, she attended a Subway franchisee's business meeting in Chicago on July 20. Also, there is no proof that she ever notified her co-owners Bobby and Beverly Rogers regarding the supposed change in ownership. Such conduct or lack thereof is not suggestive of one who has divested herself of her ownership interest in a business. In addition, the provision in Danita Belch's will bequeathing her interest in the Selmer Subway to Robert Belch if he assumed all debts of the business and if he did not contest the will does not adequately provide for Robert Belch under the requirements of *Findley*. For the foregoing reasons, we reverse the trial court and find that Danita Belch's transfer of her ownership interests in the various Subway corporations to the Childrens' Trust was done with a fraudulent intent and must be set aside.

**II. Whether the trial court erred in failing to declare that Robert Belch was a joint owner or partner with Danita Belch of certain businesses:**

Robert Belch contends that he was a joint owner or partner in the Subway corporations which operated restaurants in Lexington, Union City and at Jackson-Carriage House. The trial court found otherwise, and we affirm.

It is conceded that Robert Belch worked in and was involved in the day-to-day operations of the restaurants; he attended meetings and conventions and was even authorized to sign checks and hire and fire employees. However, we are unaware of any precedent where one's involvement in the management or daily operations of a corporation, without more, operates to make one an owner of a corporation.

Each of the aforementioned restaurants is owned and operated by a separate corporation, incorporated under the laws of this State. Partnerships and corporations are separate legal

entities in the eyes of the law. A partnership is an association of two or more persons to carry on as co-owners a business for profit. Tenn. Code Ann. § 61-1-105(a). While the intent to form a partnership may be implied, the record shows that the parties intended that the various restaurant businesses be operated as corporations. See, ***Lambert v. S&L Plumbing Co., Inc.***, 935 S.W.2d 411 (Tenn. App. 1996). Therefore, any contention that Belch became a partner with the true owners through his involvement in the businesses is without support in law. Belch, himself, testified that he did not recall any time at which either Beverly or Bobby Rogers stated any intention to enter into a partnership with him. Beverly Rogers testified that she never intended for Robert Belch to be an owner in any form or fashion, and there was no evidence presented that Danita Hawkins Belch ever intended for Robert Belch to be made an owner.

Robert Belch alternatively contends that he became a co-owner by virtue of his marriage to Danita Hawkins Belch. In support of this contention, Belch relies upon corporate minutes dated January 7, 1992 and January 4, 1993, which indicate that he was to be compensated at the same rate of pay as Danita Hawkins Belch and Beverly and Bobby Rogers, the true owners, were to be compensated. However, such an assertion has the effect of eroding his position that his alleged ownership vested upon marriage; Robert Belch and Danita Hawkins did not marry until January 17, 1992, ten days after one of the three separate Subway corporation boards of directors had agreed upon his rate of compensation.

Robert Belch introduced two memoranda dated July 25, 1993, in which he was listed as an owner of some unnamed Subway restaurant, and he also introduced three memoranda related to store manager benefits, dated in September 1993 and signed by Danita and Robert Belch and by Beverly and Bobby Rogers. Beverly Rogers, the corporate secretary for the various Subway restaurant corporations at issue, testified that Robert Belch had typed the memoranda and that she had never seen any document where Robert Belch was listed as an owner other than those prepared by Belch himself. Moreover, Robert Belch was never an officer in any of the Subway corporations at issue, nor did he possess any indices.

### III. Whether the trial court erred in failing to declare that Robert Belch and Danita Belch owned certain businesses as tenants by the entirety.

The trial court found that Robert and Danita Belch did not own any of the Subway

8

Restaurants as tenants by the entirety. We will first consider Robert Belch's assertion that he and Danita Belch owned the Selmer Subway Restaurant as tenants by the entirety and that he became the sole owner as the surviving tenant by the entirety upon her death. The trial court found that each owned fifty percent of the unissued stock in the Selmer store.

The record reflects that in December 1993, Robert and Danita Belch purchased the Subway Restaurant located in Selmer, Tennessee for $80,000.00. Danita and Robert Belch each contributed $20,000.00 of their own money toward the purchase price and then secured a loan from Central State Bank for $40,000.00 for the balance of the purchase price. They jointly executed a promissory note for the $40,000.00 loan.

Although the Buy and Sell Agreement and the subsequent Bill of Sale listed the buyers as Robert and Danita Belch, it is undisputed that a corporate charter was filed with the Tennessee Secretary of State incorporating the business as Subway of Selmer No. 12193, Inc. The sales and use tax application filed with the Tennessee Department of Revenue lists the business as Subway of Selmer No. 12193, Inc. Randy Pedigrew, a Jackson lawyer, testified that he handled the incorporation for the parties, and that the agreement was that each party would own fifty percent of the issued stock. He prepared a stock certificate for 250 shares for Danita Belch and a stock certificate for 250 shares for Robert Belch. He testified that Danita Belch signed the certificates as secretary for the corporation and that Robert Belch was to come by his office and sign the stock certificates as president of the corporation, but that he never did do so.

It is legally permissible for husband and wife to own real and personal property in any manner they choose, such as tenants in common, tenants by the entirety, individually, in partnership, as life tenants, remaindermen, or in any other manner. *Griffin v. Prince*, 632 S.W.2d 532 (Tenn. 1982). Tenancy by the entirety is a form of property ownership unique to married persons. It is well-settled that both real and personal property may be owned by spouses as tenants by the entirety. *Catt v. Catt*, 866 S.W.2d 570, 573 (Tenn. App. 1993). The essential characteristic of a tenancy by the entirety is that each spouse is seized of the whole or the entirety and not of a share or a divisible part. Upon the death of one spouse, ownership in tenancy by the entirety property immediately vests in the survivor. *Grahl v. Davis*, 971 S.W.2d 373, 378 (Tenn. 1998).

9

The *Griffin* Court held, "Words of a conveyance or legal instrument which would make two other persons joint tenants under the common law or tenants in common . . . will create tenancy by the entirety in a husband and wife." *Id*. at 535. In *Lamberth v. S&L Plumbing Co., Inc*., 935 S.W.2d 411 (Tenn. App. 1996), this Court said:

> Creation of an estate by the entireties is a question of intent; it may be inferred from the circumstances, "but should rest upon convincing evidence and never upon conjecture."

*Id.* at 412 (quoting from *Oliphant v. McAmos*, 197 Tenn. 367, 373, 273 S.W.2d 151, 154 (Tenn. 1954). The evidence in the record before us does not preponderate against the trial court's finding that Robert and Danita Belch each owned fifty percent of the stock in Subway of Selmer No. 12193, Inc. The parties chose to operate as a corporation, and the unrefuted testimony is that the stock was to be issued to each of them individually for fifty percent interest in the corporation. Under this state of the record, there is no "convincing evidence" that the parties owned the Selmer Subway Restaurant or the stock in the corporation, Subway of Selmer No. 12193, Inc., as tenants by the entirety.

Robert Belch also asserts that he and Danita Belch owned an interest in the Jackson-Oil Well Subway corporation as tenants by the entirety. Robert Belch is named in the charter as the incorporator of the Jackson-Oil Well corporation which was filed with the Secretary of State on July 7, 1994. The record reveals that three checks were drawn on Robert and Danita Belch's joint checking account to pay initial rent expenses, to pay the incorporation fee and to open a corporate checking account. However, there is no proof in the record regarding the ownership of the shares of stock or who held the franchise. The record contains no proof as to leasing arrangements or who made the initial investment in the corporation. Moreover, testimony revealed that Robert Belch had no involvement in the actual ownership and operation of the corporation. Danita Belch apparently believed that she owned 250 shares of stock in the Jackson-Oil Well Subway corporation on July 1, 1994, when she attempted to transfer those shares to the Childrens' Trust, but we find no proof in the record of any ownership interest by Robert Belch. In the absence of any proof to the contrary, we must affirm the trial court's determination that Robert and Danita Belch did not own the Jackson-Oil Well Subway Restaurant or stock in the corporation as tenants by the entirety.

Finally, the Court turns its attention to whether the Danita Belch and Robert Belch owned the Subway corporations operating restaurants in Lexington, Union City and at Jackson-Carriage House as tenants by the entirety. The evidence clearly preponderates against a finding that the Belches jointly owned those Subway corporations. Each of the corporations had been in existence for many years before Robert and Danita Belch married, and were, in fact, founded during Mrs. Belch's marriage to Dalton Hawkins.

There was no proof of any intent on the part of Danita Belch, much less the other owners, to allow Robert Belch an ownership interest in the Subway corporations operating restaurants in Lexington, Union City and at Jackson-Carriage House.

We concur in the trial court's finding that Robert Belch and Danita Belch each owned a fifty percent interest in the Selmer Subway Restaurant and that Robert Belch owned no interest as tenant by the entirety in any of the other restaurants.

In sum, we reverse the trial court's judgment that Mrs. Belch's transfer to the trust was not fraudulent and affirm the trial court's findings in all other respects. The case is remanded to the trial court to determine what interest in the corporate stock of the Union City, Lexington, Jackson Carriage House, and Jackson Oil Well Road Subway businesses Mrs. Belch transferred to the trust, and to enter the appropriate order setting aside the transfers. Costs of appeal are assessed one-half to Plaintiff and one-half to Defendants.

_____
**W. FRANK CRAWFORD,**
**PRESIDING JUDGE, W.S.**

**CONCUR:**


_____
**ALAN E. HIGHERS, JUDGE**


_____
**DAVID R. FARMER, JUDGE**