PINKERTON *v*. TURMAN *et al.*

(*Nashville*, December Term, 1953.)

Opinion filed May 21, 1954.

J. PAUL WHITE, of Union City, and HENDERSON & HENDERSON, of Franklin, for appellants.

WRIT COURTNEY, JR., and R. L. RICHARDSON, JR., of Franklin, HENRY C. McCALL, JR., of Columbia, THOS. G. WATKINS, of Nashville, and JAMES R. BROWN, of Centerville, for appellees.

450

Mr. Chief Justice Neil delivered the opinion of the Court.

The bill in this cause was filed in the Chancery Court of Williamson County, Tennessee, by Joe Pinkerton, Substituted Trustee under the will of J. T. Morton deceased against all of the heirs at law and next of kin of the said Morton and his wife, Mary Ellen Morton, also deceased, seeking a sale of the real estate owned by J. T. Morton, and for the construction of his will.

The defendants were very numerous. Many of the heirs at law and next of kin of J. T. Morton filed answers in which they deny that the heirs and next of kin of Mrs. Mary Ellen Morton take any part in the estate. The answers of defendants, who are the heirs and next of kin of Mrs. Morton, claim that under the doctrine of equitable conversion the residuary estate of J. T. Morton, effective as of his death, is to be treated as cash, and administered as such, and that with the exception of certain specific legacies, his entire estate passed to his surviving widow under the Statute of Distribution; that

the same should be administered as part of her estate and distributed under the provision of her will among her nieces, nephews and representatives of such. Answers were filed by guardians ad litem for minor defendants and all unknown parties.

The cause was heard by the Chancellor on bill and answer who held in effect that under the doctrine of equitable conversion the entire estate of the testator was converted into personalty for the purpose of intestate succession and that at his death his entire estate passed under the Statute of Distribution to his next of kin subject to the widow's life estate and the payment of special legacies, but since she did not dissent from her deceased husband's will she took nothing by inheritance from her husband; that her devisees and next of kin cannot be allowed to share in that part of the estate of her husband which was not specifically disposed of by his will. All of the foregoing is a statement of the case as appears from the brief and assignments of error of appellants, who were granted an appeal from the Chancellor's decree. It is substantially correct; the facts were not controverted.

The pertinent parts of the will of J. T. Morton deceased provide: Item 2, a life estate in the homeplace on the Boyd Mill Turnpike, consisting of 13½ acres, together with all personal property, such as household and kitchen furniture and farming implements, with the right of the widow to have the same sold and the proceeds invested in First Mortgage Land Notes "and the interest thereon turned to my wife for her own use."

Item 4 authorized the Executors to encroach upon the corpus if necessary for the wife's comfort and support. Item 5 directs the Executors to collect his life insurance

of $5,000 and pay to his widow the sum of $4,000 "to do as she so desires with."

Item 6: "At the death of my beloved wife, Mary Ellen Morton, I direct that my real and personal estate be sold and all moneys collected and I hereby authorize, empower and direct my executors to invest same and hold intact for a period of three years after the death of the last one of us, Mary Ellen Morton, and John T. Morton, at which time I direct that my Executors pay to my nephew, Tom Morton, son of W. F. Morton, the sum of $500.00 and to my wife's nephew, Robert Ernest Nichol, whom we have raised $3000.00, to Morton Nichol my wife's nephew, the son of Gil Nichol the sum of $500.00."

Item 7: "I have a *sic* leg cherry dining table that was formerly owned by Joseph Bizwell, grandfather of Walter Bizwell, and I bequeath Walter Bizwell this table."

Item 8: "In the event any of my sister's nephews or nieces should die before three years after *cease* I hereby revoke any amount herein devised to them and the same shall remain as a part of the corpus of my estate."

Item 9: "Lastly I hereby nominate and appoint the Harpeth Trust Company, a corporation doing business in the Town of Franklin, as my sole Executor of this my last will and testament."

"In testimony of all of which witness my hand on this 4th day of August, 1931.

(signed)   J. T. Morton"

The testator, J. T. Morton, had no children and left surviving him his widow, Mrs. Mary Ellen Morton, and a number of nieces and nephews, all of whom are made

defendants to the bill. The testator's widow did not dissent from the will. She died testate in Obion County, Tennessee, in 1950, and by the terms of her will all her estate with the exception of $500 was devised and bequeathed to her nieces and nephews, some twenty-five or more in number. At the time of J. T. Morton's death he owned real and personal property in Williamson County, all of which by agreement and by order of the court was sold by the Trustee at auction. According to the Chancellor's opinion the personal estate of J. T. Morton deceased, when the bill was filed was valued at about $15,000, while the real estate, sold at auction, brought the sum of $36,760, and was later confirmed by the court.

The only assignment of error is as follows:

"The Court erred in decreeing as follows:

"It is further considered by the Court that Mary Ellen Morton not having dissented from said will, elected to take the benefits provided her thereunder. Having taken such benefits under the will, she took nothing further by inheritance, and her heirs at law and next of kin are bound by her election."

The argument advanced by appellants for a reversal of the Chancellor's decree may be summarized as follows: (1) that a reasonable construction of the entire will of J. T. Morton fully justifies the conclusion that he did not intend to exclude his wife from participating in his residuary estate; (2) that she was not required to dissent from the will; and (3) under the will, by operation of law, the remainder interest vested in the widow, who was his only next kin, and that in realty she was the cestui que trust under the trust created by the will.

The appellees, in support of the decree, contend that there is nothing appearing in the will to even suggest that the testator intended that his widow should have any part of the residuary estate; that she, having elected to take under the will and having accepted benefits under its express provisions until her death, her heirs at law and next of kin take no part of the property by inheritance.

The foregoing was the holding of the Chancellor, and he decreed accordingly.

It is clear from an examination of the whole will that the widow was devised only a life estate in the property owned by her husband, except $4,000 bequeathed to her to do with as she pleased. While the will made provision that the executor was authorized to sell property, if necessary, for her support, none was sold for that purpose. It is conceded that she was given no power to sell and convey, which would have had the effect of converting her life estate into a fee simple.

It appears that upon the death of Mrs. Morton all of the residuary estate, consisting of several parcels of land, was sold by order of the court as provided under Item 6 of the will. The Executors were directed to invest the proceeds and "hold intact for three years after the death of the last one of us, Mary Ellen Morton, and John T. Morton", at which time certain legacies be paid, to wit $500 to testator's nephew, $3,000 to his wife's nephew and $500 to another nephew of his wife. There is nothing in the will to indicate who should be the beneficiaries of the residuary estate. Since the lands sold were converted into money it would pass as personalty under the Statute of Distribution as intestate personalty. We find no merit in the appellants' contention that this remainder interest

"vested in the widow, who was his next of kin", and that she was the cestui que trust under the trust created by the will.

■■ In arguing the question of the testator's intention as to who were to be the beneficiaries of the so-called remainder interest counsel for appellants stress the point that: "The matter most dominant in his mind was a desire to take care of and protect his wife as far as he could and relieve her of the burden of business cares." To this we agree, and no question is made that he did not amply provide for her, but the will, when considered as a whole, does not indicate that she is to have the residuary estate. Counsel further say on the brief at page 16, *"there is no residuary disposition.* We find nothing in the will to show whether the testator cared whether his wife's numerous relatives or his own more numerous relatives receive anything under his will or share in any way in his remainder estate, if any were left."  (Emphasis ours.) To this we agree, also that there is nothing to show an intent that he desired his wife or her estate be excluded from the remainder interest. It should be added, however, as heretofore observed, there is nothing to show his intent to include her as a beneficiary in the remainder. We think the strongest and most convincing evidence of the testator's intention that his wife was not to enjoy the corpus of the residuary estate is found in Item 6 of the will wherein he expressly directed that this property (not consumed by her by its use) "be sold and the proceeds be invested and *held intact* for a period of three years after the death of the last one of us, Mary Ellen Morton, and John T. Morton." Moreover we cannot determine the devolution of estates based upon  the mere surmise as to the testa-

tor's intention. *In re Young's Estate,* 123 Cal. 337, 344, 55 P. 1011; *Bingel* v. *Volz,* 142 Ill. 214, 31 N. E. 13, 16 L. R. A. 321.

The contention of appellant that the widow was not required by law to dissent, and her failure to do so should not bar her right to have the residue as *his next of kin,* is without merit. Conceding that the right to dissent is a personal right and the statute, Code Section 8358, is for her benefit, it in no wise changes the settled law of this State that if she is put to an election she takes under the will, or she may dissent and take the estate that devolves upon her by law.

The statute provides: "Where a satisfactory provision in real or personal estate is not made for her; in which case she shall, in writing, signify her dissent in open court, to be entered of record, within one year after the probate of the will." It further provides that where provision is made for her out of decedent's personal estate, the whole of the husband's property, including the bequest, is taken for the payment of his debts, she may without dissent sue for her dower. "And in either case, she shall be endowed and provided for as if her husband died intestate, and shall be entitled to her distributive share as provided in Section 8360."

It is settled law in this state that "*if the widow fails to dissent within the time allowed by law, it will be presumed conclusively that the provisions are satisfactory to her,* and she having thus, by failure to dissent from the will, elected to take under it, can not be allowed to share in the estate of which her husband died intestate, and can only receive the property given to her by the will." *Wrenne* v. *American Nat. Bank,* 183 Tenn. 247, 256, 191 S. W. (2d) 547, 551, opinion by Mr. Justice

GAILOR. The opinion goes on to say, ''This has been the law in Tennessee from very early times, as is evident from many reported cases'', citing the cases. The first reported case is that of *Malone* v. *Majors,* 27 Tenn. 577, decided in 1847, opinion by Mr. Justice Turley.

The learned Chancellor rested his opinion upon *Wrenne* v. *American Nat. Bank,* supra, and also the following cases: *Bowers* v. *McGavock,* 1904, 114 Tenn. 438, 85 S. W. 893; *Walker* v. *Bobbit,* 1905, 144 Tenn. 700, 88 S. W. 327; *McGinnis* v. *Chambers,* 156 Tenn. 404, 1 S. W. (2d) 1015, 82 A. L. R. 1492; and *Hamilton Nat. Bank* v. *Haynes,* 180 Tenn. 247, 174 S. W. (2d) 39. Counsel for the appellants concede that ''the general principles, announced in these cases, support the Chancellor's holding.'' We think the law as announced in all of the foregoing cases has become a rule of property in this State and will not now be modified, based upon a mere argument of able counsel as to what was the secret intent of the testator.

But contention is made that the case at bar is controlled by *Garner* v. *Home Bank & Trust Co.,* 171 Tenn. 652, 107 S. W. (2d) 223, which they attempt to distinguish from a long line of decisions, referred to herein, insisting that ''each case must stand on its own facts.'' It would unduly prolong this opinion if we attempted to discuss and distinguish the many decisions found in the books. The case relied on by appellants, i. e. *Garner* v. *Home Bank & Trust Co.* in reality supports the decree of the Chancellor. The Special Justice cites the case of *Magevney* v. *Karsch,* 167 Tenn. 32, 65 S. W. (2d) 562, 92 A. L. R. 343, as applicable and controlling the case decided, wherein it was said [171 Tenn. 652, 107 S. W. (2d) 225]:

''In a recent case by this court it was held that a

> remainder, undisposed of by will as to which the life tenant failed to exercise a power of appointment, passed as intestate property to the heirs or next of kin of the testator to be ascertained as of the date of his death."

The rule of property applicable when the widow fails to dissent, i. e. as to whether she take intestate property as next of kin of the testator, was not considered by the Court. It is most significant that the cases cited in *Wrenne* v. *American Nat. Bank,* supra, and relied on by the Chancellor, were not even mentioned in the opinion.

We think the Chancellor's opinion is supported by the great weight of authority. It results that the assignments of error are overruled and his decree is in all things affirmed. The cause will be remanded, however, for such other orders and decrees as may be necessary to its final disposition. The cost of the appeal will be paid out of the proceeds of sale of the residuary estate of J. T. Morton deceased, including fees of the guardian ad litem and such other reasonable counsel fees as the Chancellor may consider as a proper charge against said estate for defending the will.