IN THE COURT OF APPEALS

FILED

June 4, 1997

Cecil Crowson, Jr.
Appellate Court Clerk

| | |
|---|---|
| IN RE: ESTATE OF CARL PARROTT, | ) SEVIER CHANCERY |
| | ) C. A. NO. 03A01-9612-CH-00386 |
| WANDA P. PATTERSON, | ) |
| CO-EXECUTOR, | ) |
| | ) |
| Plaintiff-Appellant | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| vs. | ) HON. CHESTER S. RAINWATER, JR. |
| | ) CHANCELLOR |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| JERRY K. GALYON, | ) |
| CO-EXECUTOR, | ) |
| | ) |
| Defendant-Appellee | ) |
| | ) AFFIRMED AND REMANDED |
| and | ) |
| | ) |
| BETTY LATHAM, | ) |
| | ) |
| Intervenor | ) |

RONALD L. GRIMM, Ambrose, Wilson, Grimm and Durand, Knoxville, for appellants, Wanda P. Paterson, Bonnie Shipman, Floyd Parrot, W. E. Parrott and Roy Parrott.

STEVEN E. MARSHALL, Marshall and Delius, Sevierville, for Jerry K. Galyon, co-executor.

NORMA McGEE OGLE, Ogle, Wynn & Rader, Sevierville, for Betty Jean Latham.

O P I N I O N

McMurray, J.

This is a declaratory action wherein the parties seek to have a portion of the will of Carl Parrott, deceased, construed by the court. Carl Parrott died testate on February 20, 1990. His Last Will and Testament was executed on January 3, 1983, and named his attorney, Jerry K. Galyon, and his daughter, Wanda Parrott Patterson, co-executors.

On November 6, 1990, Jerry K. Galyon filed a petition in the Sevier County Probate Court to admit the will to probate. On November 15, 1990, Wanda Parrott Patterson filed a petition in the same court for probate of the will and appointment of an executrix. She further alleged in her petition that the will was vague and ambiguous and asked for a construction of Articles III through VI of the will, or in the alternative that the court declare all provisions set forth in Articles III through VI null and void and to allow the properties owned by Carl Parrott at the time of his death to pass to the children of Carl Parrott equally pursuant to the clear and unambiguous language set forth in Article VII.

3

The case eventually made its way to chancery court. The case was originally heard by the chancellor on August 18, 1993. In his original memorandum opinion, the chancellor found the will to be subject to construction and that the will, Articles III through VI were not so ambiguous as to render them null and void.

The chancellor specifically found, among other things:

That taking the provisions of the will from its four corners together with the circumstances shown to have existed, the documentary evidence referred to in the will, the testimony offered, and applying the existing law, the intention of the testator becomes patently clear and unambiguous as to the respective properties so devised, and while the specific descriptions thereof as set forth in the will itself are less than that to be desired, nevertheless, the same are clearly identifiable as to location and description and are valid devises.

The trial court's judgment was appealed to this court. The judgment of the trial court was vacated because all necessary and indispensable parties, specifically, some of the devisees under the will, were not before the court and had not been made parties pursuant to Rule 19, Tennessee Rules of Civil Procedure or T.C.A. § 29-14-107.

Upon remand, the court, sua sponte, ordered that all proper persons be made a party to the suit. Thereafter, the case was tried a second time. After the second trial, the court found that

4

the will was valid and subject to construction so as to carry out the intent of the testator.

The chancellor further appointed Ronnie Sims, a registered land surveyor, as Special Master to prepare and report to the court metes and bounds descriptions of the tracts devised to Bonnie Chance, Roy Parrott, W. E. Parrott and Wanda Parrott. Mr. Sims did so and made a report to the court. The court concurred in the finding of the Special Master. A copy of the Special Master's report is attached hereto as Appendix A.

Under section IIIA of the will, the testator makes a specific bequest of land to Bonnie Chance, including "a twenty-five foot right of way on and over the land leading to Haskel LaFollette." In IIIB, a specific bequest of land was made to a son, Roy Parrott. The paragraph making the bequest to Roy Parrott, described the land "as set forth as Tract 1 on the plat prepared by Claude Sutton that is hereby attached to this my last will..." Likewise bequests under IIIC, and D were made to W. E. Parrott and Wanda Parrott which referred to the plat of Claude Sutton as tracts 2 and 3 respectively. Section IIIE gave to Betty Jean Parrott Latham, "the remainder of Tracts 1, 2, and 4 of real property that are more particularly described in Warranty deed of Record dated January 15, 1960, as recorded in the Register's office of Sevier County, in

5

Warranty Deed Book 131, page 537, to which reference is hereby made, a copy of which is attached."

Paragraph IV of the will provided as follows:

It is my further will and desire that the right-of-way that is described on the plat of Claude W. Sutton, that is hereby attached, shall be increased by twenty-five feet in width and continue on and over the lands devised and bequeathed to my daughter, Betty Jean Parrott Latham, and the costs of the right of way shall be born [sic] at the expense of my children, Roy Parrott, W. E. Parrott, Wanda Parrott Patterson and Betty Jean Latham [1]

The expert testimony from qualified land surveyors was conflicting. Mr. Sims, who was subsequently appointed Special Master testified at the trial as follows:

Q. ... were you hired by Jerry Galyon, co-executor of the Estate of Carl Parrott to do a survey?

A. Yes, sir, I was.

Q. Did you produce what's been filed as exhibit 3?

*     *     *

(Colloquy between counsel and the court omitted.)

Q. In response to that request, Mr. Sims, you produced what's been filed as exhibit No. 3 here in this record is that correct?

A. That's correct.

---

[1] We recognize that a part of this paragraph may be nugatory. That fact, however, does nothing to invalidate the will.

6

Q. What information did you use to produce Exhibit No. 3?

A. First of all we used the legal description in our outside boundaries. We looked at the will, and we also had a map by Claude Sutton that we used for direction for the lots that were down on the corner of the lake.

Q. Is that map that you referred to by Claude Sutton Exhibit No. 2 in this record? I show you Exhibit 2 and ask you if that's the map you're referring to?

A. Yes, sir, it is. I have a copy of it.

Q. When you say the lots down by the lake are you talking about the lots referred to as Tract 1, Tract 2, and Tract 3 on Exhibit No. 2 to Claude Sutton [sic]?

A. That's correct, sir.

Q. Sir did you find evidence of the lots noted as Tract 1, and Tract 2 and Tract 3 on Exhibit No. 2 on the ground when you went out to the property?

A. Yes, we did. We didn't find all the corners but we did find enough to restructure on existing pins that were still there.

Q. From those pins is that what you produced the survey plat in front of you, Exhibit No. 3?

A. That's correct.

Q. Did you have any difficulty locating those tracts?

A. No, not at all.

Q. Does your survey, sir, correspond with survey of Pat [sic] Sutton Exhibit, Exhibit No. 2?

A. Pretty much so. What they did years ago, our bearings may change a little bit, but most of the bearings were magnetic bearings. We actually turn our angles out. It will change a little bit, but the existing pins were there.

7

Q. What about the tract up in the corner, this half acre tract; how did you determine the dimensions of that tract?

A. If I'm not mistaken, that was spelled out either in the will [sic]. I don't know exactly how it came about. I believe it was—I referred to a half acre in that corner.

Q. Is there any other corner where that half acre could be in terms of the will that says on top of the ridge adjoining the lands of Jack Hoard and other lands of Bonnie Chance? Is there any other corner on the Parrott property that half acre could be?

A. Not in my opinion. I had surveyed that adjacent property too, and I was aware of that.

Mr. Jimmy Daryl Ogle, a licensed land surveyor testified as follows:

A. Based on all the evidence that I've discovered and with all the maps, the map of Sutton and the map Hassle Wolfe did and the map that Sims did and the evidence on the ground, I can't relate any evidence that I've found so far that would relate to the map that was done by Mr. Sutton. I've been unable to determine any of the corners that he shows on the ground. Nor have I have [sic] been able to locate what appears the corners that Hassle has shown in his survey. The survey that Mr. Sims shows, I believe could be duplicated back on the ground. It's that I can't determine what he based his survey on. It doesn't match Sims' nor Hassle's survey.

Q. You mean it doesn't match Sutton's or Hassle's?

A. Correct.

8

Mr. Hassle Wolfe, a licensed surveyor also testified over objection of counsel that he was asked by the deceased, Carl Parrott, prior to his death, to meet with Mr. Parrott. He testified as follows:

Q. What exactly did Mr. Parrott ask you to do, Mr. Wolfe?

            *       *       *

(Colloquy between court and counsel omitted).

A. We were asked to go out and meet with Mr. Parrott. We went out and met with him, talked with him, and I believe the Lathams and some others were there. Then we went from Mr. Parrott's over to the property and attempted to re-establish the tracts.

Q. When you say re-establish the tracts, what tracts are you referring to?

A. We were given the Sutton map.

Q. And is the map you were given, exhibit No. 2?

A. Yes, it appears to be the one.

Q. To re-establish the location of the tract shown on Exhibit No. 2, is that what you're telling the court you were asked to do?

A. That's right.

Q. Were you able to do that, sir?

A. We did, yes.

Q. What did you find on the ground?

A. Well, it was monumented. The pins were still there. They had not been destroyed, no evidence of disturbance.

9

The trial court obviously accredited the testimony of Mr. Sims and Mr. Wolfe.

The trial court then entered a judgment finding that the will was not so ambiguous as to render it null and void. The judgment entered was, in substance, the same as in the first trial. This appeal resulted.

The appellants insist that the chancellor "abused his discretion" in finding that the locations of property devised in the Last Will and Testament of Carl Parrott were "patently clear and unambiguous" and in adopting the Ronnie Sims Plat and Special Master's report as correct descriptions of the property. In support of this assertion, the appellants argue that the Court of Appeals may disturb the concurrent finding of the Master and the trial court because the findings involve a mixed question of law and fact and are not supported by substantial and material evidence.

In our review of the record, we find it unnecessary to pass upon the question regarding the concurrent findings because the findings of the chancellor are supported by a preponderance of the evidence. Thus, a greater burden than "material evidence", i.e.

10

"preponderance of the evidence", has been met.  <u>See</u> Rule 13(d), Tennessee Rules of Appellate Procedure.

Appellants next argue that the trial court "abused its discretion" in finding the will was patently clear and unambiguous. The cardinal rule for interpreting and construing a Last Will and Testament is the ascertainment of the intent of the testator.  That intent, when known, will be given effect unless prohibited by some rule of law or public policy.  <u>Cowden v. Sovran Bank/Central South</u>, 816 S.W.2d 741, 744 (Tenn. 1991).  However, for the testator's will to be given effect, there must be some evidence of that intent: "We cannot determine the devolution of estates based upon the mere surmise as to the testator's intention." <u>Pinkerton v. Turman</u>, 196 Tenn. 448, 268 S.W.2d 347, 350 (1954).

We agree with the observations of the appellants that extrinsic evidence is not generally admissible to demonstrate the intent of the testator.  As a general rule extrinsic evidence is not admissible to remove a patent ambiguity but is admissible to remove a latent ambiguity.  <u>White v. Kaminsky</u>, 196 Tenn. 180, 264 S.W.2d 813 (1954) and authorities cited therein. [2]

---

[2]There are Tennessee cases which speak of ambiguities without distinguishing latent from patent.  <u>See</u> <u>e.g.</u>, <u>Barretville Bank & Trust Co. v. Bolton</u>, 182 Tenn. 364, 187 S.W.2d 306 (1945); <u>McMillin v. Great Southern Corp.</u>, 63 Tenn. App. 732, 480 S.W.2d 152 (1972); and <u>Jones v. Brooks</u>, 697 S.W.2d 885 (Tenn 1985).

11

> A patent ambiguity is one produced by the uncertainty, contradictoriness or deficiency of the language of an instrument, so that no discovery of facts or proof of declarations can restore the doubtful sense without adding ideas which the words do not sustain. A latent ambiguity is one where the equivocality of expression or obscurity of intention does not arise from the words themselves, but from the ambiguous state of extrinsic circumstances to which the words of the instrument refer, and which is susceptible of explanation by the mere development of extraneous facts without altering or adding to the written language or requiring more to be understood thereby than will fairly comport with the ordinary or legal sense of the words and phrases used. Teague v. Sowder, 121 Tenn. 132, 114 S.W 484 (1908).

Ward v. Berry & Assoc. Inc., 614 S.W 2d 372 (Tenn. App. 1981).

We are of the opinion that the will with all its attachments, which are specifically referred to in the will, make the intent of the testator patently clear.

> Ambiguity that may be removed by parol evidence is not a doubt thrown upon the intention of the party in the instrument by extrinsic proof tending to show an intention different from that manifested by the words of the instrument. It must grow out of the question of identifying the person or subject mentioned in the instrument ..., etc. Harrison v. Morton, 2 Swan, 469; Gourley v. Thompson, 2 Sneed, 391; Eatherly v. Eatherly, 1 Cold., 464, 78 Am. Dec., 499; Horton v. Thompson, 3 Tenn. Ch., 581; Clark v. Clark, 2 Lea., 725.

Teague v. Sowder, 121 Tenn. 132, 114 S.W 484 (1908).

The appellants lastly argue that the extrinsic evidence admitted cannot definitively locate the properties devised or the rights of way leading to them  In support of this proposition, the

12

appellants quote from <u>Hearne v. Alexander</u>, 3 Shannon's cases 224 (1875):

> [A testator's] ... intention must be so plain on the face of the instrument or capable of being made so plain that the executor may proceed to execute his trusts without the slightest misgiving, and with the absolute conviction that he is doing exactly what his testator intended he should do—no more and no less.

The same basic argument was put forth in <u>Sheffield v. Franklin</u>, 222 S.W.2d 974 (Tenn. App. 1947). In response the court stated:

> The test is whether a surveyor with the deed before him and with or without the aid of extrinsic evidence can locate the land and establish the boundaries. (Citation Omitted).
>
> Though parol evidence cannot be resorted to to supply material parts of a deed, it is always admissible to show where the land is that fills the description contained in the instrument. <u>Ragsdale v. McCall</u>, [145 Tenn. 684, 237 S.W. 66 (1922)]. It is permissible to apply but not to supply, description. Ibid. ...

<u>Sheffield</u>, supra, page 979.

While we recognize that the court in <u>Sheffield</u> was speaking of a deed, we are of the opinion that the same rules apply to Wills. We find no merit in the appellants' argument.

13

We note parenthetically that while the will may not be fair, it is not our duty to assess fairness. The intent of the testator must be carried out, no matter how unfair it may seem so long as it is not in violation of law or prohibited by public policy.

We affirm the judgment of the trial court in all respects. Costs are assessed to the appellants and this case is remanded to the trial court.

_____
Don T. McMurray, Judge

CONCUR:

_____
Charles D. Susano, Jr., Judge

_____
William H. Inman, Senior Judge

IN THE COURT OF APPEALS

IN RE: ESTATE OF CARL PARROTT,    )    SEVIER CHANCERY
                                  )    C. A. NO.  03A01-9612-CH-00386
WANDA P. PATTERSON,               )
CO-EXECUTOR,                      )
                                  )
          Plaintiff-Appellant     )
                                  )
                                  )
                                  )
                                  )
vs.                               )    HON. CHESTER S. RAINWATER, JR.
                                  )    CHANCELLOR
                                  )
                                  )
                                  )
                                  )
JERRY K. GALYON,                  )    AFFIRMED AND REMANDED
CO-EXECUTOR,                      )
                                  )
          Defendant-Appellee      )
                                  )
and                               )
                                  )
BETTY LATHAM,                     )
                                  )
          INTERVENOR              )

## JUDGMENT

This appeal came on to be heard upon the record from the Chancery Court of Sevier County, briefs and argument of counsel. Upon consideration thereof, this Court is of opinion that there was no reversible error in the trial court.

We affirm the judgment of the trial court in all respects. Costs are assessed to the appellants and this case is remanded to the trial court.

PER CURIAM