**In re ESTATE OF Kenneth Marvin JONES.**

Court of Appeals of Tennessee, Eastern Section, at Knoxville.

May 9, 2005 Session.

July 29, 2005.

Permission to Appeal Denied by Supreme Court Dec. 27, 2005.

Douglas R. Beier, Morristown, Tennessee, for the appellant, Wanda Sue Jones.

John T. Milburn Rogers and William S. Nunnally, Greeneville, Tennessee, for the appellees, Charles Anthony Jones and Leisa Jones Matthews.

## OPINION

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J., and D. MICHAEL SWINEY, J., joined.

This case involves a dispute in probate between Wanda Sue Jones ("the widow")—the surviving spouse of Kenneth Marvin Jones ("the decedent")—and the children of the decedent's first marriage— Charles Anthony Jones and Leisa Jones Matthews ("the decedent's children"). We affirm in part and reverse in part. Case remanded with instructions.

### I.

The decedent and the widow were married on December 2, 1989. Each brought property into the marriage: the decedent owned two tracts of land in Greene County—a tract of approximately 78 acres ("the Henry farm") that he acquired in 1987 from Iva Kate Henry, and a tract of some 141 acres ("the Jones farm") acquired by him in September, 1989, from his mother and sisters following the death of his father; the widow owned a 66–acre farm in Hamblen County that she acquired by way of an inheritance in 1987. In addition, the decedent owned a herd of cattle and some farm equipment. No children were born to the parties' marriage.

The Jones and Henry farms both were burdened with a mortgage at the time of the parties' marriage. On January 4, 1990, the widow, according to her testimony, gave the decedent $30,000 so he could

pay off the mortgage on the Henry farm. The widow claims that her payment was not a loan, but rather, again according to her, payment for a one-half interest in the Henry farm. It is undisputed that the decedent never deeded an interest in this property to the widow.

At the time of their marriage, both of the parties worked at TRW. In 1993, the decedent left TRW and established a poultry business on the Jones farm. The widow continued to work at TRW. On June 15, 1993, the decedent and the widow executed a note and deed of trust on the Jones farm to Farm Credit in exchange for a borrowing of $155,000 to build the initial poultry houses on the property. The debt was increased to $313,500 on June 11, 1994, when more chicken houses were built. In addition to the deed of trust, Farm Credit had a purchase money security interest in the equipment of the poultry business. The amount of the Farm Credit debt at the time of the decedent's death was approximately $140,000. It was paid off out of the proceeds of a credit life insurance policy on the decedent's life.

The parties also jointly purchased a 32.69–acre tract adjacent to the Jones farm in June, 1995. The 32.69 acres was owned by them as tenants by the entirety. The couple had a joint bank account maintained in the names of "Kenneth M. Jones or Sue Jones." They deposited a portion of their wages and income in this account. From this account, they made payments on the promissory notes, and paid for expenses incurred in the operation of the poultry business. These expenditures included the purchase of equipment for the business.

The decedent died unexpectedly on January 1, 2001, at the age of 53. At the time of his death, the decedent's children were apparently unaware the decedent had left a holographic will. Leisa Jones Matthews testified at trial that she first saw the handwritten document, later probated as the decedent's holographic will, several years prior to trial. She testified that she did not ask for a copy, as she did not realize its legal significance. Consequently, when the decedent's children filed their "Petition for Administration of Estate and Issuance of Letters of Administration" on June 25, 2001, they proceeded as if the decedent had died intestate. The probate division of the trial court appointed the decedent's children as co-administrators and issued letters of administration, all by order entered June 25, 2001. On October 29, 2001, Martha Jones Easterly and Karen Jones Ross, the sisters of the decedent, filed claims against the estate for debts owed to them in connection with the decedent's purchase of the Jones farm.

The decedent's children filed a declaratory judgment action against the widow on June 27, 2001. In their complaint, the decedent's children asked the court for a declaratory judgment as to the parties' respective interests in the decedent's real and personal property, and in the income from the poultry business. The widow filed an answer on October 1, 2001; attached to the answer was a copy of the decedent's holographic will. This is the first time the will appears in the record.

Upon learning that the decedent had died with a holographic will, the decedent's children filed an amended complaint on August 9, 2002, seeking to probate a copy of the holographic will. They stated in their amended complaint that they believed the original of the will was in the widow's possession, but that she had been unwilling to produce it.

The holographic will, which is addressed to the parties, provides, in relevant part, as follows:

[The widow] will have 100% control of the house, garage and approximately 1

acre around it for as long as she wants it or her lifetime. This also includes contents (except any personal items that belongs [sic] to either of you ... ).

There is an accidental life [insurance] policy threw [sic] T.R.W. with Anthony and Leisa listed [as beneficiaries] about 150,000. The other policy at T.R.W. is to [the widow].

The farm and cattle and equipment is hard for me to divide. First off [the widow] has ½ ownership of the property I bought from Iva Kate Henry. I want every thing [sic] to stay in the family if at all possible. Leisa I hope you will understand that I would like to see Anthony have the farm and all, if he wants to keep it. But if not it is 50/50. Leisa if Anthony wants it please settle with him at a reasonable price, say 50,000 for you [sic] part ... !

(Underlining in original). This holographic will was signed by the decedent and dated January 14, 1991. All of the parties conceded at trial that the subject instrument was, in fact, the last will and testament of the decedent.

On August 27, 2002, the widow responded to the amended complaint by filing a petition for exempt property and a year's support, together with a notice of her election against the will and a petition for homestead. She also asked that she be appointed personal representative of the decedent's estate. On September 6, 2002, the decedent's children responded by filing an objection, both to her petitions and her election against the will. They contended that the widow's filings were untimely and barred by the time limits prescribed by Tenn.Code Ann. § 31–4–102(a)(1) (Supp. 2004), a part of the elective-share statutory scheme. They also filed a partial inventory of the decedent's estate. The court issued a memorandum opinion with respect to the allegation that the widow's filings were untimely, in which the court found that the widow's petitions and election were timely filed. By a separate order entered December 3, 2002, the court admitted the decedent's holographic will to probate and ordered that the decedent's children would remain as co-personal representatives of the estate.

The trial court consolidated the various pleadings for trial. Following a two-day bench trial, the court took the case under advisement and requested the parties to file post-trial briefs. The trial court issued further opinions on June 5, 2003, and November 26, 2003, regarding the issues litigated at trial. As to the claims raised by the sisters of the decedent, the parties agreed at trial that both of their claims were valid and should be sustained. The trial court treated the sisters' claims as "secured debts" and ordered that these claims, being $17,500 in total, be deducted as a part of the net estate calculation under Tenn.Code Ann. § 31–4–101(b) (Supp.2004).

On January 1, 2004, the trial court entered its final judgment, which detailed the assets to be included in the calculation of the net estate for the purpose of determining the widow's elective share. The judgment also recited the assets transferred to the widow that were to be offset against her elective share. The court further ordered (1) that the widow was to receive a year's allowance of $10,000; (2) that she was *not* entitled to homestead;[1] and (3) that there were debts of $111,757 against the gross estate. The decedent's children were declared to be the owners of the

---

1. The widow was not living in the residence at the time of the decedent's death. She does not raise an issue on appeal with respect to the trial court's denial of her petition for homestead.

Jones farm and the Henry farm, the court having determined that the decedent was the fee simple owner of these properties at the time of his death. The widow was declared to be the owner of the 32.69–acre tract that she had purchased with the decedent. The poultry business was declared to be one-half the property of the widow and one-half that of the estate. As a result of this division, the trial court decreed that half of the post-death profits from the poultry business would be paid to the estate, and the other half would be paid to the widow. Per the court's calculations, the widow was entitled to an elective share in the amount of $237,503.93.

## II.

Both parties raise issues on appeal relative to the trial court's decrees pertaining to the estate. The widow argues that the trial court erred (1) in finding that the Jones farm was, in its entirety, an asset of the estate; (2) in failing to grant her a one-half interest in the Henry farm; and (3) in awarding the Jones and Henry farms to the decedent's children. She claims that the 32.69 acres decreed to be hers by operation of law is now landlocked. In addition to responding to the issues raised by the widow, the decedent's children contend (1) that the trial court erred in permitting the widow to dissent from the will, because, in their judgment, her petitions for an elective share, a year's allowance, homestead, and exempt property were untimely; (2) that the trial court erred in failing to apply partnership and business law principles in assessing whether the poultry business was a sole proprietorship or a partnership; and (3) that the trial court erred in holding that income from the poultry business is part of the dece-

dent's "net estate" for the purpose of calculating the widow's elective share. Both parties challenge the trial court's treatment of the debts due Martha Easterly and Karen Ross as "secured debts."

## III.

As previously noted, the decedent's children contend that the trial court erred in failing to dismiss the widow's petition to elect against the holographic will of the decedent and her petition for her statutory entitlements. They argue that the widow's petitions were not timely filed.

■ Tenn.Code Ann. § 31–4–102(a)(1) provides as follows:

> The surviving spouse may elect to take such spouse's elective share in decedent's property by filing in the court and mailing or delivering to the personal representative, if any, a petition for the elective share within nine (9) months after the date of death, or within six (6) months after the appointment of the personal representative, whichever limitation last expires.[2]

The statute is strictly construed in favor of compliance with the statutory time periods. *See Wrenne v. American Nat'l Bank,* 183 Tenn. 247, 191 S.W.2d 547, 551 (1946) (quoting *Waterbury v. Netherland,* 53 Tenn. 512, 521 (1871)). *See also Gilliam v. Nunley,* No. 80, 1990 WL 130821, at *1 (Tenn. Ct.App. E.S., filed September 12, 1990).

The decedent's children argue that the widow did not satisfy either of the time periods specified in the statute.

■ As previously noted, the decedent died on January 1, 2001. The widow's "election" petition was filed on August 27,

---

**2.** The time limitations on the filing of a petition for the statutory entitlements are identical to those set forth in the elective share statute. *See, e.g.,* Tenn.Code Ann. §§ 30–2–101(d) & 30–2–102(g) (2001).

2002, obviously more than nine months from the date of his death. Therefore, if the widow's petition is to be sustained as timely, it must come under the alternate time period in the statute—"within six (6) months after the appointment of the personal representative."

The decedent's children were initially appointed as co-administrators of the decedent's estate on June 25, 2001. They were appointed to administer what was thought to be an *intestate* estate since the widow had not yet produced the decedent's holographic will. The will was subsequently submitted for probate on August 9, 2002, and was admitted to probate on December 3, 2002. If the latter date is the operative one, the widow's election of August 27, 2002, obviously was filed in a timely fashion.

The personal representatives were not vested with authority to administer a *testate* estate until it was established that the decedent died leaving a will. By the same token, as a practical matter, the widow could not formally dissent against the will until the personal representatives authorized to administer the *testate* estate were identified. We recognize that the widow's failure to produce the holographic will at an earlier time is arguably[3] what caused the delay in the commencement of the administration of this *testate* estate. However, be that as it may, the fact remains that there was no will to elect against until it was admitted to probate. We hold that the requirement of strict construction of the statutory time periods is honored under the facts of this case by a holding that the critical date is the date on which the trial court probated the holographic will and, for the first time, "anointed" the decedent's children to administer this *testate* estate.

■ Accordingly, we hold that the widow's election was timely filed.[4]

### IV.

The remaining issues before us pertain to decisions made by the trial court following a bench trial. Our review of these issues is *de novo* on the record of the proceedings below with a presumption of correctness as to the trial court's factual findings unless the evidence preponderates against those findings. Tenn. R.App. P. 13(d). We accord no such presumption to the trial court's conclusions of law. *Union Carbide Corp. v. Huddleston,* 854 S.W.2d 87, 91 (Tenn.1993).

### V.

The widow argues that the trial court erred in holding that the Jones farm—a tract of approximately 141 acres—was an asset of the estate. While acknowledging the plain facts—that the property was purchased by the decedent prior to the parties' marriage and was, at all relevant times, titled in his sole name—the widow nevertheless argues that she owns a one-half interest in the property because the mortgage payments were made out of jointly-held funds and because she contributed to the improvement of the property and the preservation of its value. She characterizes her interest as an equitable one—a resulting trust.

---

3. We say "arguably" because one of the decedent's children admitted she was *aware* of the document's existence although she testified that she did not understand its legal significance.

4. The trial court reached the same conclusion but for a different reason. However, we can affirm a trial court's decision if we find that it is the correct one even if we disagree with the court's rationale. *Shutt v. Blount,* 194 Tenn. 1, 249 S.W.2d 904, 907 (1952).

In its memorandum opinion, the trial court stated the following with respect to the widow's interest in this property:

> [T]he [widow] asserts that by virtue of (1) the payment of all mortgage indebtedness upon said parcel having been made by means of funds held in a joint account of [the decedent and the widow], (2) the payment of poultry business expenses having been paid by funds from the joint account, and (3) [the widow's] efforts in working in the poultry business, title should be equitably placed with [the widow] by reason of a resulting trust. Again considering the controlling principles of resulting trust, this Court concludes that [the widow] has failed to show by clear, cogent and convincing evidence that a resulting trust should be established in her favor with regard to the 141 acre tract.

■ A resulting trust has been defined thusly:

> Resulting trusts are those which arise where the legal estate is disposed of, or acquired, without bad faith, and under such circumstances that Equity infers or assumes that the beneficial interest in said estate is not to go with the legal title. These trusts are sometimes called *presumptive* trusts, because the law presumes them to be intended by the parties from the nature and character of their transactions. They are, however, generally called *resulting* trusts, because the trust is the result which Equity attaches to the particular transaction.

*Smalling v. Terrell*, 943 S.W.2d 397, 400 (Tenn.Ct.App.1996) (quoting Gibson's Suits in Chancery, § 382 (Inman, 7th Ed.1988)) (emphasis in original). However, the overriding principle pertaining to resulting trusts is that "the trust *must arise at the time of the purchase*, attach to the title at that time and not arise out of any subsequent contract or transaction." *Livesay v. Keaton*, 611 S.W.2d 581, 584 (Tenn.Ct.App. 1980) (emphasis added). It is undisputed that in the instant case, the grounds upon which the widow relies, *i.e.*, her contributions to the property after it was purchased, do not fall under the rubric of a resulting trust as they occurred subsequent to the decedent's purchase of the land in September, 1989. The facts of this case do not make out a resulting trust.

## VI.

■ The widow next argues that the trial court erred in failing to grant her a one-half interest in the Henry farm. Specifically, she contends that she gave the decedent $30,000 to pay off the mortgage on this property in consideration of his promise to give her a one-half interest in the property. The trial court, however, held that her claim was barred by the statute of frauds, as there was no writing memorializing her interest.

The statute of frauds, codified at Tenn. Code Ann. § 29–2–101(a) (2000), provides that "[n]o action shall be brought,"

* * *

(4) Upon any contract for the sale of lands, tenements, or hereditaments, or the making of any lease thereof for a longer term than one (1) year; . . .

unless the promise or agreement, upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or some other person lawfully authorized by such party.

While a will, under certain circumstances, can be used to satisfy the "memorandum or note" requirement of Tenn.

Code Ann. § 29–2–101(a),[5] the holographic will now before us does not so qualify. In *Lambert v. Home Fed. Sav. & Loan Assoc.*, 481 S.W.2d 770 (Tenn.1972), the Supreme Court examined the subject requirement:

[T]he memorandum ... must contain the essential terms of the contract, expressed with such certainty that they may be understood from the memorandum itself or some other writing to which it refers or with which it is connected, without resorting to parol evidence. . . .

*Id.* at 773 (quoting 49 Am.Jur. Statute of Frauds, §§ 353, 363–64). In the instant case, the holographic will simply states that "Sue has 1/2 ownership of the property I bought from Iva Kate Henry." This bald statement does not state the terms of the alleged promise or agreement between the widow and the decedent with respect to the Henry farm. Accordingly, it does not meet the definition of a "memorandum or note" of "the promise or agreement." Tenn.Code Ann. § 29–2–101(a). This issue is found adverse to the widow.[6]

### VII.

The widow also argues that, since the 32.69–acre parcel to which she is entitled by operation of law is now landlocked by virtue of the trial court's decision to give the Henry and Jones farms to the decedent's children, this is a clear indication that the decedent intended for her to have a half-interest in the Henry farm. We find this argument to be without merit. As discussed herein, the trial court properly awarded the Henry farm to the decedent's children. The fact that the 32.69 acres is landlocked does not disturb our decision since the decedent's children indicated at trial that they would permit the widow to have an easement over their property to the 32.69 acres. On remand, the trial court is directed to establish the widow's easement lest this issue remain unresolved following the end of this contentious litigation.

### VIII.

The decedent's children challenge the correctness of the trial court's holdings with respect to the poultry business. They contend that the court erred in applying a real property analysis to the facts impacting the poultry business. They argue that the court should have applied partnership principles and general business law in determining whether the poultry business was a sole proprietorship or a partnership.

In its memorandum opinion, the trial court discussed its decision regarding the poultry business and the rationale for that judgment:

[P]oultry operations commenced on the 141 acre farm in 1993. In addition to [the decedent] devoting his full attention and efforts to this chicken business endeavor, [the widow] assisted by joining with [the decedent] in borrowing money, the proceeds of which were used in the business. Further, certain expenses of the poultry operation were paid from funds on deposit in the parties' joint bank account. Finally, [the widow] personally participated to a limited extent in certain poultry operations. The evidence again supports a finding that the poultry operation conducted on the 141 acre tract was owned by [the decedent and the widow] as joint tenants and not

---

5. *See Harris v. Morgan*, 157 Tenn. 140, 7 S.W.2d 53, 57 (1928).

6. Since the widow has elected against the will, we do not have to determine if the subject language from that instrument constitutes a devise.

as tenants by the entirety. One-half the value of the poultry operation at the time of [the decedent's] death constitutes the property of [the widow] while the remaining one-half constitutes an asset of [the decedent's] estate.

As can be seen, the trial court characterized the poultry business as an asset owned by the decedent and the widow as "joint tenants and not as tenants by the entirety." The court concluded that the parties, while owning the business jointly, did not intend that the full ownership would pass to the survivor upon the death of the other. In other words, the trial court concluded that there was *no* "right of survivorship." Accordingly, the court concluded that, upon the death of the decedent, his one-half interest "constitutes an asset of [the decedent's] estate" while the other half was the property of the widow.

There are Tennessee appellate decisions holding that businesses operated on *properties owned by married persons as tenants by the entirety* were intended by the parties to be owned in the same fashion.

In *Oliphant v. McAmis,* 197 Tenn. 367, 273 S.W.2d 151, 154 (1954), the Supreme Court held that a husband and wife held certain property as tenants by the entirety, which included their cattle business. Even though the cattle were registered in the husband's name, as was the business account from which the business registration was paid, the evidence demonstrated that the parties intended to hold all things as common property. *Id.* at 153. The husband had often said that they were co-owners of the cattle operation, and where the wife was entitled to the property on which the operation was situated by virtue of tenancy by the entirety, there was no reason why she should not also be entitled to the produce of the farm, the cattle, and the farm implements. *Id.* at 153–54.

In a subsequent case, we declined to employ principles of partnership law where, again, the married parties owned the property on which the business was situated as tenants by the entirety. *Catt v. Catt,* 866 S.W.2d 570, 573–74 (Tenn.Ct. App.1993). Relying on *Oliphant,* we held that since the land on which the business was conducted was titled in the parties' names as tenants by the entirety, both parties borrowed funds to open and run the business, and they had only one checking account used for both business and personal use, the parties owned the business as tenants by the entirety. *Id.* at 574. The mere fact that the tax returns were only filed in the decedent's name did not prove otherwise. *Id.*

■ In the instant case, however, the poultry business was not operated on property owned by the parties as tenants by the entirety. For this reason, we do not believe that the "property" approach utilized in *Oliphant* and *Catt* can be used to justify a property analysis in the case at bar. We hold that the trial court's judgment that the poultry business was owned by the decedent and the widow as joint tenants with *no* right of survivorship is not an appropriate way to characterize the ownership of this business. We agree with the decedent's children that partnership law and general business principles should be used in this case in determining whether the poultry business was a sole proprietorship or a partnership.

■ It is undisputed that there is no partnership agreement memorializing the ownership of the poultry business. However, the Revised Uniform Partnership Act provides that "the association of two (2) or more persons to carry on as co-owners of a business for profit forms a partnership, whether or not the persons intended to form a partnership." Tenn.Code Ann. § 61–1–202(a) (2002). Subject to several

exceptions stated in the applicable statute, the receipt of a share of the profits of the business constitutes prima facie evidence that a partnership exists. Tenn.Code Ann. § 61–1–202(c)(3). It therefore follows that a partnership exists "[i]f the parties' business brings them within the scope of a joint business undertaking for mutual profit—that is to say if they place their money, assets, labor, or skill in commerce with the understanding that profits will be shared between them." *Bass v. Bass,* 814 S.W.2d 38, 41 (Tenn.1991) (citing *Pritchett v. Thomas Plater & Co.,* 144 Tenn. 406, 232 S.W. 961, 969–70 (1921)). In the absence of a written partnership agreement, it is incumbent upon the party alleging its existence to prove the fact of partnership by clear and convincing evidence. *Tidwell v. Walden,* 205 Tenn. 705, 330 S.W.2d 317, 319 (1959); *B & S Enterprises v. Rowland,* No. E2003–00458–COA–R3–CV, 2004 WL 115162, at *1 (Tenn. Ct.App. E.S., filed January 26, 2004).

 The key to a determination of whether or not a partnership exists is intent. The Supreme Court has stated that

[t]he intent of parties to form a partnership may be implied; it need not be expressed in writing or orally, if it can be derived from the parties' actions. [I]t may be asserted objectively from all the evidence and circumstances. It is not essential that the parties know that their contract, in law, creates a partnership. The legal effect of the parties' agreement, not their subjective intent, determines whether there is a partnership.

*Bass,* 814 S.W.2d at 41 n. 3 (quoting 59A Am.Jur.2d *Partnership,* § 152 (1987)). We have applied these principles in the context of a widow seeking a declaration that she owned the decedent's business. *Lamberth v. S & L Plumbing Co., Inc.,* 935 S.W.2d 411, 413 (Tenn.Ct.App.1996).

We hereby remand this matter to the trial court for a determination of whether the poultry business was a sole proprietorship or a partnership. It is not a "joint tenancy" as that concept is generally known in real property law.

The decedent's children also argue that it was error for the trial court to award the income from the poultry business as it did. Since this issue will be impacted by the trial court's ultimate determination as to whether the poultry business is a sole proprietorship or a partnership, we decline to address this issue here. It can be addressed by the trial court on remand.

## IX.

 Both sides take issue with the trial court's treatment of the debts due the decedent's sisters, Martha Jones Easterly and Karen Jones Ross. The parties contend that the trial court treated these debts as if they were "secured debts" as that concept is found in Tenn.Code Ann. § 31–4–101(b) (Supp.2004). The parties claim that the trial court directed that the debts due these two individuals were to be deducted in arriving at the "net estate" under Tenn.Code Ann. § 31–4–101(b). They point out that neither claim was secured by a mortgage on the Jones farm or otherwise secured by collateral.

Tenn.Code Ann. § 31–4–101(b) provides that a number of deductions are permitted in arriving at the "net estate." One of these deductions is "secured debts to the extent that secured creditors are entitled to realize on the applicable *collateral.*" (Emphasis added).

We agree with the parties that the trial court erred in deducting the sisters' claims as if they were "secured debts." They were not. There is no evidence that these debts—resulting from the sale of the Jones farm to the decedent—were secured

by a mortgage or otherwise.[7] Therefore, they should not have been deducted under Tenn.Code Ann. § 31–4–101(b) in determining the net estate. It is clear to us that the "secured debts" deduction alluded to in Tenn.Code Ann. § 31–4–101(b), with its express reference to "collateral," is the traditional concept of secured obligations. On remand, the court should recompute the net estate and the elective-share payable to the widow without deducting these claims.

## X.

The decision of the trial court is hereby affirmed in part, and reversed in part. We remand for further proceedings consistent with this opinion. Costs on appeal are taxed to the appellant, Wanda Sue Jones.

7. At trial, the parties agreed that the sisters' claims were valid. They also agreed as to the amounts of those claims. With respect to Ms. Ross, the parties agreed to deed her a "1.08–acre tract to satisfy her claim." Ms. Easterly received "$6,500 to resolve her claim." However, neither had retained a mortgage on the land or an interest in other collateral as security for these obligations of the decedent.