IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON

_____

SARAH A. HULL,

     Plaintiff-Appellant,

Vs.

**RUTH E. JOHNSON,**
**Commissioner of Revenue**
**of the State of Tennessee,**

     Defendant-Appellee.

Shelby Chancery No. 108584-2
C.A. No. W1999-02011-COA-R3-CV

**FILED**

**December 15, 1999**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

FROM THE SHELBY COUNTY CHANCERY COURT
THE HONORABLE FLOYD PEETE, JR., CHANCELLOR

G. Patrick Arnoult; The Bogatin Law Firm of Memphis
For Plaintiff-Appellant

Paul G. Summers, Attorney General and Reporter
Natalie S. Price, Elizabeth A. Carnahan,
Assistant Attorneys General
For Defendant-Appellee

*AFFIRMED AND REMANDED*

Opinion filed:

**W. FRANK CRAWFORD,**
**PRESIDING JUDGE, W.S.**

**CONCUR:**

**ALAN E. HIGHERS, JUDGE**

**DAVID R. FARMER, JUDGE**

This appeal involves a dispute over a gift tax assessment. Plaintiff, Sarah A. Hull, appeals the order of the trial court that upheld the assessment, denied her request for a refund, and awarded defendant, Commissioner of Revenue for the State of Tennessee, attorney's fees.

Sarah Hull and William T. Hull had been married twenty years when Mr. Hull died in August of 1994. Each had children by previous marriages, Mrs. Hull two, and Mr. Hull three. All were adults at the time of Mr. Hull's death. At the time of his death, Mr. Hull was the owner of all the stock in a family business, United Warehouse and Terminal Corporation.

In 1994 the Hulls worked with an attorney, Ava Hicks in preparing an estate plan. Mrs. Hull prepared financial statements for the periods ending December 31, 1992 and December 31, 1993 that were given to Ms. Hicks to assist her in preparing the Hull's estate plan. Ms. Hick prepared the estate plan in such a way that if Mr. Hull died first, his last will and testament would leave the maximum credit shelter amount of $600,000.00,[1] in equal shares, to his three daughters of his first marriage. Mr. and Mrs. Hull owned account no. 800009-6728 at First American National Bank as joint tenants with right of survivorship. Mr. Hull died on August 17, 1994. Mrs. Hull had been named and became executrix of Mr. Hull's estate. On November 10, 1994, Mrs. Hull transferred $200,000.00 from the joint account to the account of Mr. Hull's estate in order to provide the estate with sufficient funds to satisfy cash bequests in Mr. Hull's will to his three daughters. On May 8, 1995 Mrs. Hull filed a partial disclaimer renouncing and refusing to accept any interest to the extent of $187,482.00 of the $200,000.00 that was transferred. The disclaimer stated that $187,482.00 represented additional funds required to be added to the $412,518.00 available in Mr. Hull's name alone to assure distribution of $200,000.00 to each of his three surviving daughters named under his will. Mrs. Hull filed the necessary Tennessee inheritance tax return and the Federal estate tax return, including in both a disclosure of the partial disclaimer. The Tennessee Department of Revenue challenged the legitimacy of the disclaimer and refused to recognize the disclaimer on the grounds that the disclaimer was not filed before the transfer of funds from the joint account into the estate account. The Tennessee Department of Revenue also justifies its refusal of the partial disclaimer

---

[1] Ms. Hick explained in her testimony that the "credit shelter amount" is an amount which is equal to the amount of property that can be transferred without paying a death tax that would otherwise be taxable which she established to be $600,000.00 in 1994 for both federal estate and for Tennessee inheritance tax purposes.

reasoning that Mrs. Hull could not disclaim any of the funds held by her and the decedent in a joint bank account with a right of survivorship.

After its refusal to recognize the partial disclaimer the Tennessee Department of Revenue filed on Mrs. Hull's behalf a Tennessee Gift Tax Return and an assessment of a gift tax with interest and penalty for a total assessment of $13,742.00. Mrs. Hull paid the assessed amount. The Commissioner later waived and refunded the penalty portion on the assessment. As a result the disputed amount is $11,283.00. Mrs. Hull filed her complaint for a refund of the tax paid plus accrued interest.

After a bench trial on the merits, the chancellor found:

> [t]he plaintiff did not file an effective partial disclaimer and her right to disclaim the funds at issue is barred because she transferred them before the expiration of the period in which she was permitted to disclaim, pursuant to T.C. A. § 31-1-103 (d).

Mrs. Hull's claim for refund was denied and the chancellor awarded the Commissioner a judgment of 20% of the amount in dispute, $2,256.60, the maximum amount allowed by law for attorney's fees.

Plaintiff has appealed and presents two issues for review, as stated in her brief:

> The first issue presented for appeal is whether or not appellant filed an effective and timely partial disclaimer of funds from a joint bank account so as to enable the estate to have sufficient funds to pay certain specific bequests to the decedent's three surviving daughters.

> The second issue is whether or not appellant could disclaim any part of funds on deposit in a joint bank account with her husband which had a right of survivorship upon the death of the husband.

The resolution of the issues requires the interpretation of pertinent parts of T.C.A. § 31-1-103 (Supp. 1998), which we quote:

> **Disclaimer. --** (a) A person who is:
> (1) The donee of a gift, whether outright or in trust;
> (2) A recipient of property from a decedent's estate;
>
> (3) A recipient of property on the exercise of a power of appointment;
> (4) A recipient of property resulting from another person's disclaimer;
> (5) A recipient of property resulting from any other type of gratuitous transfer;
> (6) A fiduciary holding powers as a fiduciary; or

(7) A beneficiary designated in a pay-on-death account, an insurance policy, an individual retirement account, an annuity, a retirement plan whether qualified or not, or any other type of deferred compensation arrangement; may disclaim all or part of the property, powers or interest therein as provided herein. Such disclaimer may be made by the person's personal representative, trustee, guardian, conservator, attorney in fact or parent having custody if the disclaimant is a minor and no legal guardian has been appointed. If the disclaimer is made by a fiduciary, including, but not limited to, the enumerated positions in the preceding sentence, the disclaimer shall be binding on any successor fiduciary. . . .

\*            \*            \*

d) Any:

(1) Assignment, conveyance, encumbrance, pledge, or transfer of property or an interest therein or any contract therefor;

(2) Written waiver of the right to disclaim or any acceptance of property by an heir, devisee, donee, person succeeding to a disclaimed interest, beneficiary, or person designated to take pursuant to a power of appointment; or

(3) Sale or other disposition of property pursuant to judicial process; made before the expiration of the period in which the person is permitted to disclaim, bars the right to disclaim as to the property.

The court's role in statutory interpretation is to ascertain and to effectuate the legislature's intent. *Jordan v. Baptist Three Rivers Hosp.*, 984 S.W.2d 593 (Tenn. 1999). In giving effect to the legislative intent, the court should not unduly restrict or expand the statute's coverage beyond its intended scope. *State v. Butler*, 980 S.W.2d 359 (Tenn. 1998). The legislative intent must be ascertained from the natural and ordinary meaning of the language used in the context of the entire statute without any forced or subtle construction which would extend or limit its meaning. *State v. Butler*, *supra.* "When the words of a statute are plain and unambiguous, the assumption is 'that the legislature intended what it wrote and meant what it said.'" *Worley v. Weigels, Inc.*, 919 S.W.2d 589, 593 (Tenn. 1996)(quoting *McClain v. Henry I. Siegel Co.,* 834 S.W.2d 295, 296 (Tenn. 1992)(citations omitted)).

With these rules in mind, we will consider the issues as presented by appellant.

There are no disputes as to the facts of the case. While Mr. Hull was alive, Mrs. Hull maintained her own separate checking and savings account and Mr. Hull had his account, the account in dispute. The main source of funds for Mr. Hull's account was an inheritance through the Hull trust, from which he began receiving benefits in 1976 at the death of his father. During Mr. Hull's life Mrs. Hull did not withdraw any funds from this account for her benefit, and the account was not treated as her account. The only funds that she withdrew from the account

during her husband's life were at his direction, and all for his benefit while he was in the hospital.

After Mr. Hull's death, Mrs. Hull did not close the account and put her name alone on the account, nor did she write any checks for her personal benefit from the account. Mrs. Hull admits to writing the check out of that account into the estate checking account four months after Mr. Hull's death, but explains that the funds transferred were necessary to make up the sum of $600,000.00 to distribute to Mr. Hull's three daughters according to his will. These funds were transferred to the estate account solely to fund the bequest to Mr. Hull's daughters. Mrs. Hull asserts that Mr. Hull's daughters were not the natural object of her bounty, and she would not have given them $187,000.00 to fund the bequests from her own money. Mrs. Hull asserts that Mr. Hull's daughters are not beneficiaries under her will written at the time that Mr. Hull's will was written.

The Commissioner contends that because Mr. and Mrs. Hull owned the account in question as joint tenants with right of survivorship, this created a tenancy by the entirety in the account. The Commissioner asserts that when Mrs. Hull transferred the funds into the estate to provide the estate with sufficient funds to satisfy the cash bequest to Mr. Hull's daughters, the account was owned solely by Mrs. Hull.[2] The Commissioner also asserts that the partial disclaimer was not valid, because Mrs. Hull was barred from disclaiming under T.C.A. § 31-1-103 (d), because she transferred the funds prior to attempting to disclaim them.

It is undisputed that Mrs. Hull transferred the funds from the joint account to the estate account before she filed the partial disclaimer. Giving the words of the statute their usual and ordinary meaning, we find that any transfer of property before filing a disclaimer bars the right to disclaim. The chancellor did not err in holding that Mrs. Hull's right to disclaim is barred.

As to Mrs. Hull's second issue, Commissioner asserts that Mrs. Hull is not a person enumerated by T.C.A. § 31-1-103 (a) as one who may disclaim. Mrs. Hull asserts that she is entitled to validly disclaim by virtue of T.C.A. § 31-1-103 (a)(1)(2)(5) and (7). To consider Mrs. Hull's assertion, we must examine the legal status of the account in question. The account was

---

[2] Commissioner's brief notes that although Mrs. Hull attempted to disclaim only $187,482.00, she actually transferred $200,000.00, and that had the Commissioner been aware of this amount at the time of the assessment, the assessment might have been based on $200,000.00 rather than on $187,482.00 as stated in the partial disclaimed.

created as a joint account with right of survivorship. In *Griffin v. Prince*, 632 S.W.2d 532 (Tenn. 1982), our Supreme Court said:

> It is well settled in this state that the words of a conveyance or legal instrument which would make two other persons joint tenants under the common law, or tenants in common under T.C.A. § 64-107, will create tenancy by the entirety in a husband and wife. (citations omitted).
>
> *          *          *
>
> Under the authorities discussed above, the fact that the account cards did not use the words "tenants by the entirety" or that they used the word "joint" does not prevent ownership by the entirety if in fact the depositors were married when the accounts were created, and if their marriage had not terminated. . . .

*Id.* at 535-536.

Under the undisputed facts in this case, the account in question was held by Mr. and Mrs. Hull as tenants by the entirety. In a tenancy by the entirety, each party owns the whole, and on the death of one of the parties, the survivor takes no new title or estate, because the survivor is in possession of the whole from its inception. *Moore v. Cole*, 200 Tenn. 43, 289 S.W.2d 695 (1956); *Catt v. Catt*, 866 S.W.2d 570 (Tenn. App. 1993).

Since Mrs. Hull owned the account at the time of its creation, she does not qualify as a recipient of property qualified to disclaim as set out in T.C.A. § 31-1-103 (a).

Accordingly, the order of the trial court is affirmed. The case is remanded to the trial court for such further proceedings as are necessary. Costs of the appeal are assessed against the appellant.

_____
**W. FRANK CRAWFORD,**
**PRESIDING JUDGE, W.S.**

**CONCUR:**


_____
**ALAN E. HIGHERS, JUDGE**


_____
**DAVID R. FARMER, JUDGE**